No. 24,991.

The State of Kansas, ex rel. Charles B. Griffith, as Attorney-general, *Plaintiff*, v. E. T. Thompson, as State Treasurer, Norton A. Turner, as State Auditor, and the Home State Bank of Russell, *Defendants*.

### SYLLABUS BY THE COURT.

Mandamus—*An Action to Compel the State Treasurer and Auditor of State to Place in the State Treasury Certain Money Arising From Sale of Sand and Gravel Belonging to the State, and Money Known as the Federal Vocational Fund.* The money arising from the sale of state property under chapters 278, 279, 280, and 281 of the Laws of 1921, the money arising from _the sale of sand and gravel taken from the beds of navigable streams in the state, and the money appropriated by congress and turned over to the state treasurer for vocational education and known as the federal vocational fund, are public funds, and the state treasurer, in handling them, is governed by the laws of the state concerning the handling and depositing of public funds.

Original proceeding in mandamus. Opinion filed February 9, 1924. Writ allowed.

*Charles B. Griffith,* attorney-general, *John F. Rhodes, Donald W. Stewart, W. C. Ralston,* and *Dennis Madden,* assistant attorneys-general, for the plaintiff.

*Bennett R. Wheeler, S. M. Brewster, John L. Hunt, Robert Stone, George T. McDermott, Robert L. Webb,* and *Beryl Johnson,* all of Topeka, for the defendants.

The opinion of the court was delivered by

Marshall, J.: The plaintiff prosecutes this action to compel the defendants E. T. Thompson, as state treasurer, and Norton A. Turner, as state auditor, to withdraw from the defendant, the Home State Bank of Russell, and place in the treasury of the state the money arising from the sale of certain state property under the provisions of chapters 278, 279, 280, and 281 of the Laws of 1921; the money arising from the sale of sand and gravel taken from the navigable rivers of the state under sections 71-101 and 71-102 of the Revised Statutes; and the money appropriated by the congress of the United States to be used in the state of Kansas and known as the federal vocational fund. The plaintiff alleges that Norton A. Turner is a stockholder in the Home State Bank of Russell and that the Home State Bank has not been designated a state depository by the board of treasury examiners.

Chapters 278, 279, 280, and 281 provide that the irrigation commissioner shall sell certain real and personal property belonging to the state of Kansas. Those statutes direct the irrigation commissioner to pay certain items connected with the sales and to pay the balance into the state treasury, where it shall become a part of the general revenue fund of the state. The answers of the defendants allege, and the evidence tends to show, that the irrigation commissioner sold a portion of this property and remitted the proceeds thereof to E. T. Thompson, who deposited it in his name in the Home State Bank of Russell, and that the irrigation commissioner requested that E. T. Thompson, treasurer, and Norton A. Turner, auditor, handle the funds for him. The funds were handled in that manner until the time of the return of the alternative writ of mandamus in this action, when there was on deposit in that bank to the credit of E. T. Thompson, a balance of $645.41. It appeared on the argument of this case that this money has been turned into the general revenue fund of the state.

The defendants Thompson and Turner argue that the law creating this fund directs that certain payments be made out of it; that no appropriation has been made by the legislature for those payments; and that it is therefore necessary to keep those funds separate and apart from the general revenue fund of the state until those payments are made. They argue that, if this fund is placed in the state treasury, no part of it can be taken therefrom except by an appropriation by the legislature. They argue further that, because this is what they call a custodial fund and because it is necessary to keep it separate and apart from the general revenue fund of the state, the laws of the state governing the custody and deposit of public funds do not apply and therefore the treasurer has the right under the law to deposit this fund as his judgment directs.

At the outset it must be conceded that the money arising from the sale of this property belongs to the state and does not belong to E. T. Thompson. It was public money in the hands of the irrigation commissioner. It remained public money when it was deposited in the Home State Bank to the credit of E. T. Thompson, who was then treasurer of the state. He could not receive public money in an individual capacity. It was public money when it came into his hands, thereafter remained public money, and as such was under his control as state treasurer.

Section 75-604 of the Revised Statutes reads:

"The treasurer shall be required to keep safely in the state treasury, without loaning, using, or depositing in banks or elsewhere, all public moneys of whatsoever character paid into such treasury, or otherwise at any time placed in his possession and custody as state treasurer, until the same is ordered by the proper department or officer of the state government to be transferred or paid out according to law, and when such orders for the transfer or payment are received, faithfully and promptly to make the same as directed, and also to do and perform all other duties as state treasurer which may be imposed by law: *Provided,* That nothing in this act shall be so construed as to prohibit the state treasurer from depositing moneys in banks designated as state depositories in accordance with the act providing for state depositories."

Section 75-2401 makes the governor, the secretary of state, and the state auditor a board of treasury examiners, and that section and section 75-2402 give the board of treasury examiners power to designate the banks in which the public funds of the state may be deposited. That authority is not limited to a part of the public funds of the state; it is not limited to the school fund, to the general revenue fund, or to any other particular fund, but includes all the public funds. If the money arising from the sale of this property is a public fund, it is under the control of the board of treasury examiners. It has been seen that it is a public fund. It is therefore under the control of the board of treasury examiners and must be kept in the treasury or be deposited in a bank named as a depository by the board of treasury examiners.

The last sentence of section 75-2401 reads:

"It shall be unlawful for the board to select any bank as such depository in which either the state treasurer or any member of the board of treasury examiners is interested as stockholder."

The evidence shows that the state auditor, a member of the board of treasury examiners, is a stockholder of the Home State Bank, owning a one-third interest therein, and is vice president of the bank. Under these circumstances, the Home State Bank could not have been designated by the board of treasury examiners as a depository for any part of the public funds.

This action includes what is known as the sand fund, which is money collected under sections 71-101 to 71-109, inclusive, of the Revised Statutes. Section 71-101 reads as follows:

"That from and after the taking effect of this act it shall be unlawful for any person, partnership or corporation to take from within or beneath the bed of any navigable river or any other river which is the property of the state of Kansas any sand, oil, gas, gravel, or mineral, or any natural product whatsoever from any lands lying in the bed of any such river or any hay, tim-

ber, or other products belonging to the state, except in accordance with this act."

## Section 71-102 in part reads:

"Whenever any person shall desire to take from any such river any sand, gravel, oil, gas or mineral, or from any land in such river any hay, timber or other products, he shall first obtain the consent of the executive council of the state of Kansas and upon such terms of payment to the state of Kansas and under such terms and conditions as the said executive council may determine to be just and proper. . . . *Provided, however,* That where any navigable stream extends into or through any drainage district in the state, organized under chapter 215 of the Session Laws of 1905, and the amendments thereto, the board of directors of such district shall be entitled to one-third of the proceeds of such natural products or minerals which the state may sell from within or beneath a portion of the channel of such streams lying within such district, and said one-third of the proceeds arising from any such sale shall be paid to the treasurer of such drainage district and shall be expended only by such district for any of the purposes for which such district was created. The other two-thirds of such proceeds to be paid into the state treasury as in case of channels of rivers lying outside of such drainage district."

## Section 71-103 reads:

"The executive council is hereby authorized to make and publish in the official state paper all needful rules, terms and conditions for the taking, purchasing or selling of the articles and products mentioned in this act, and to change the same as the rights of the state and the interests of the public may require, and to make any necessary and reasonable expenses to carry the same into effect, which expenses shall be paid out of the gross proceeds of the sale of the materials covered by this act."

## Section 71-105 reads:

"The net proceeds derived from the sale of any state property under the provisions of Laws of 1913, chapter 259, or amendments thereto, shall be paid to the state treasurer under such regulations as the executive council shall provide and shall inure to the general revenue fund of the state, except as to moneys which are derived from the sale of property taken from school-land islands, which latter funds shall inure to the benefit of the permanent school fund: *Provided,* That all of the net proceeds received as compensation for sand taken from the bed of any navigable stream within the state, except such amounts as drainage districts may be entitled to under the law, shall be paid to the state treasurer and shall be by him credited to the general revenue fund."

Sections 71-103 and 71-105 of the Revised Statutes give the executive council certain control over taking sand and gravel from the navigable rivers of the state and over the proceeds derived from the sale thereof, but does not give to the executive council power to divert such proceeds from the control of the laws of this

state concerning the deposit of public funds. The executive council must be obedient to that law the same as all other officers of the state.

The money arising under this law is a public fund. In certain instances, part of it belongs to drainage districts, but the remainder belongs to the state. It is all a public fund, and the treasurer is responsible for it as such. Being a public fund, it must be handled by the treasurer in the manner directed by law. What has been said concerning the money arising from the sale of state property under chapters 278, 279, 280, and 281 of the Laws of 1921, applies with equal force to the money arising under sections 71-101 to 71-109, inclusive, of the Revised Statutes.

Chapter 280 of the Laws of 1917, sections 72-4301 to 72-4307, inclusive, of the Revised Statutes, accepts the provisions of an act of congress making an appropriation for vocational education. The money appropriated by congress and apportioned to this state has been paid over to the state treasurer. This fund has been deposited in the Home State Bank of Russell under conditions somewhat similar to the fund arising from the sale of state property by the irrigation commissioner.

Section 72-4306 of the Revised Statutes reads:

"The state treasurer is hereby designated as the custodian for vocational education as provided in this act and is charged with the duty and responsibility of receiving and disbursing any moneys paid to the state from appropriations made by congress for the purposes of this act and any moneys which may be appropriated by the legislature of the state of Kansas for the purposes of this act. Said moneys shall be paid on warrants drawn by the state auditor on vouchers approved by the state superintendent of public instruction."

The fund appropriated by congress is a public fund; it is not a private one. The state treasurer as an individual is not given control of it. It is placed in his hands as treasurer of the state. The money may not belong to the state. It may belong to the federal government, but it is placed in the hands of the treasurer to be controlled by him as treasurer under the law of this state made for his government as treasurer. He cannot handle the money except in obedience to that law. The fund may not be subject to an appropriation by the legislature of the state of Kansas, but it is subject to the laws made by the state for the safekeeping of public funds.

The argument that these relatively small funds must be held outside the state treasury to avert the effect of the constitutional re-

quirement of specific biennial appropriation acts is unsound. There are certain large funds in the hands of the state treasurer, *viz.:* the permanent school fund and endowment funds of the university and agricultural college, which are invested and reinvested from time to time by the school fund ˙commissioners without appropriation or reappropriation every two years under article 2, section 24, of the state constitution. The expenses of administering the sand royalty act, and the federal vocational fund may be of that character. But if they were in the treasury as they should be, and a specific appropriation every two years were necessary to their lawful disbursement in accordance with the statutes creating them, the unauthorized handling of such funds outside of the state treasury would be ineffective to defeat the constitutional requirement imposed by article 2, section 24. In *Lehnherr v. Feldman,* 110 Kan. 115, 120, 202 Pac. 624, this court said:

"There are many separate funds in the hands of the state treasurer, which he holds only as a convenient custodian, such as the bank guaranty fund, fiscal agency funds, cash deposits for the faithful performance of contracts, and the like, which do not require legislative appropriations in order for the treasurer to disburse them."

Funds arising from the sale of property under chapters 278, 279, 280, and 281 of the Laws of 1921, the funds arising from the sale of sand and gravel taken from the navigable streams of the state, and the funds appropriated by congress for vocational education are public funds, and the state treasurer holds them as such, but they can be kept in the treasury as separate funds in separate accounts, and payments can be made out of them in the manner provided by law.

It follows that a peremptory writ of mandamus should issue to compel the withdrawal from the Home State Bank of Russell of all public money deposited therein, if that money has not already been withdrawn.