No. 31,899

The State of Kansas, ex rel. Roland Boynton, Attorney-general, *Plaintiff*, v. Kansas State Highway Commission, *Defendant*.

(32 P. 2d 493.)

Opinion filed May 3, 1934.

*Roland Boynton*, attorney-general, and *Dunkin Kimble*, assistant attorney-general, for the plaintiff.

*Wint Smith*, attorney for State Highway Commission, *Gale Moss*, assistant attorney for State Highway Commission, and *Kirke W. Dale*, of Arkansas City, for the defendant; *W. H. Vernon*, of Larned, and *Frank H. McFarland*, of Topeka, of counsel.

The opinion of the court was delivered by

HARVEY, J.: This is an original proceeding in quo warranto questioning the authority of the state highway commission to make contracts with the proper agency of the federal government for the borrowing of money on revenue-anticipation warrants for the construction and maintenance of state highways, and to provide for the payment of such warrants in accordance with chapter 98 of the Laws of 1933, Special Session, as supplemented by chapter 4 of the Laws of 1934, Special Session, and for a declaratory judgment as to the validity of the later act.

The validity of chapter 98 of the Laws of 1933, Special Session, was before this court in *State, ex rel., v. State Highway Comm.*, 138 Kan. 913, 28 P. 2d 770, where the statute was held not to be invalid for any of the many reasons urged against it. Among other things, the court in that decision held that sections 8 and 9, article 11 (as renumbered 9 and 10) of our constitution, authorized the construction and maintenance of state highways without a general-property tax, or an issue of bonds to be paid by such a tax, and also authorized special taxes for that purpose on motor vehicles and motor fuels; and further held that the authority conferred by these sections was not limited by sections 5 and 6, article 11 (as renumbered 6 and 7) of the constitution. This holding apparently gave rise to the thought that even if the state, through its highway department, should make a solemn agreement with the federal government, through its proper agency, for the borrowing of money for highway purposes and for its repayment, all in accordance with chapter 98 of the Laws of 1933, Special Session, the state legislature at some future session might reduce the amount of its present special tax on motor vehicles and motor fuels, or fail to provide in some other manner, by taxes levied or fees charged, sufficient revenues for the highway department to meet its promised repayment to the federal government of not more than $1,000,000 per year to retire its loan. There appears to have been no substantial ground for apprehension of this character, for the rule appears to be well settled that a state has no more authority to pass a law impairing the obligations of one of its own contracts than it has to pass a law impairing the obligations of contracts between individuals.

In *State, ex rel., v. Barker*, 4 Kan. 379, under an existing statute, a contract had been let for the printing of certain statutes. Before

the work was completed the legislature had repealed the act under which the contract was let and provided another method of printing the statutes. The right of the legislature to pass the later statute, impairing the obligation of the contract made under the earlier act, came before the court, which held:

"Though the legislature may modify and repeal acts of former legislatures, and cannot abridge succeeding legislative action, yet . . . where a contract is made under authority of law, the right of property arising from the contract cannot be divested by subsequent legislative action."

In *Hall v. Wisconsin*, 103 U. S. 5, the headnote reads:

"A contract between a state and a party, whereby he is to perform certain duties for a specific period at a stipulated compensation, is within the protection of the constitution; and on his executing it he is entitled to that compensation, although before the expiration of the period the state repealed the statute pursuant to which the contract was made."

In 12 C. J. 996 it is said:

"It is a well-established principle that a contract to which a state is a party is as much within the constitutional prohibition of statutes impairing the obligation of contracts as a contract between individuals. Likewise compacts between states or between states and the United States are contracts protected by the constitution of the United States."

In 25 R. C. L. 909 the rule is thus stated:

"As a general principle, one legislature is competent to repeal or modify any act of a former legislature, and one legislature cannot abridge the power of a succeeding legislature. This power is sometimes reserved by statutory provisions of a general nature. But this general principle has exceptions. A constitutional act of the legislature, which is equivalent to a contract, when performed is a contract executed, and whatever rights are thereby created a subsequent legislature cannot impair. Where a valid contract with the state has been entered into in pursuance of a legislative enactment a subsequent legislature cannot enact a law which provides for an abrogation of the contract."

Many authorities are cited in support of these texts. To allay any fear that the state would not provide funds to meet, through the highway department, its liabilities under such contract, chapter 4 of the Laws of 1934, Special Session, was enacted. It reads:

"AN ACT relating to state highways, and concerning the principal and interest of revenue-anticipation warrants for federal funds advanced under the provisions of sections 68-4a04 to 68-4a14, inclusive, Revised Statutes Supplement of 1933.

"*Be it enacted by the Legislature of the State of Kansas:*

"SECTION 1. That from and after the date the state highway commission shall have created obligations by contract or otherwise under the provisions of sections 68-4a04 to 68-4a14, inclusive, Revised Statutes Supplement of 1933,

the laws of Kansas relating to taxes levied and fees charged for the purposes of construction, improvement, reconstruction and maintenance of the state system of highways shall not be repealed or amended so that the aggregate of revenues for such purposes, will be insufficient to pay the annual installments of principal and interest and retire revenue-anticipation warrants issued under the provisions of sections 68-4a04 to 68-4a14, inclusive, Revised Statutes Supplement of 1933, as the same shall become due and payable; and the obligations incurred under the provisions of said sections shall constitute a first lien upon all revenues derived for such purposes, under the provisions of such tax and fee laws, or otherwise, until the obligations so created are fully paid and discharged.

"SEC. 2. This act shall take effect and be in force from and after its publication in the official state paper."

Following the enactment of this statute this action was brought. We shall discuss plaintiff's contentions in the order in which they are presented.

*First*, it is argued that the act does not conform to section 16 of article 2 of our constitution in that the act contains two subjects not clearly expressed in its title. We see nothing in the act not germane to the title, or dealing with unrelated subjects. It also is suggested that the act amends or revives chapter 98 of the Laws of 1933, Special Session, without reënacting and repealing the original sections. We cannot concur in this view. It is not an amendment of the prior act, and does not repeal or revive it, but is simply supplemental to it.

*Second*, it is contended the act violates section 24 of article 2 of our constitution, which reads:

"No money shall be drawn from the treasury, except in pursuance of a specific appropriation made by law, and no appropriation shall be for a longer term than two years."

Answering this contention, we note, first, that the statute in question makes no appropriation for any length of time. The two acts together provide a method of conducting certain state business, which includes the borrowing of money for certain purposes and provisions for its repayment, but neither of them makes a specific appropriation. Another answer to the suggestion, much more fundamental, is this: section 24 of article 2 of our constitution applies only to moneys that find their way into the state treasury. When our people amended section 8 of article 11 of our constitution making two sections of it—8 and 9 (as renumbered 9 and 10)—so that the state could construct and maintain a state system of highways and levy special taxes on motor vehicles and motor fuels for that purpose, they made no specific provision that the moneys so

raised and used should necessarily find their way into the state treasury, but left the legislature free to provide for the collection and disbursement of such funds in the way it deemed best. What the legislature did was to provide that these moneys, as collected, should be transmitted to the state treasurer and by him placed in the highway fund and disbursed on proper orders by the highway commission (Laws of 1929, ch. 225, §§ 17, 18; R. S. 1933 Supp. 68-416, 68-417). Since these funds are not required by the constitution to find their way into the state treasury, and by statute do not do so, section 24 of article 2, requiring appropriation of moneys from the state treasury, has no application. These funds are collected for a specific purpose. The legislature would have no authority to appropriate them for other purposes. They are collected, segregated, set aside, and can be used for one purpose only, namely, the construction and maintenance of state highways. This is not the only fund the state has, which, although deposited with the state treasurer, and disbursed by him under proper directions of other officials, does not find its way into the state treasury, and therefore does not require specific appropriation every two years by the legislature. (*Lehnherr v. Feldman,* 110 Kan. 115, 120, 122, 202 Pac. 844; *State, ex rel., v. Thompson, Treasurer,* 115 Kan. 457, 461, 462, 223 Pac. 258; *Kittredge v. Boyd,* 136 Kan. 691, 701, 18 P. 2d 563.)

*Third,* it is argued that the act violates section 4 of article 11 of the constitution, which provides:

"The legislature shall provide, at each regular session, for raising sufficient revenues to defray the current expenses of the state for two years."

This section of the constitution places a specific duty upon the legislature, but does not prohibit it from making contracts which may not be completed within two years, and providing for meeting its obligations thereunder. See *State, ex rel., v. Allen,* 133 Kan. 376, 299 Pac. 630, involving the right of the school book commission to make five-year contracts for books.

It is next contended that the statute violates sections 5, 6 and 7 of article 11 (as renumbered 6, 7 and 8) of the constitution. This is a reargument of questions determined adverse to plaintiff's contention in *State, ex rel., v. State Highway Comm.,* supra. Nothing new is presented in the argument, and we are satisfied with the conclusions there reached.

Lastly, it is contended that it violates section 2 of the bill of rights, in that it gives the United States a special privilege or im-

munity by giving it a lien upon highway funds not enjoyed by other creditors of the highway commission. We have never understood it to be a violation of the bill of rights for one who borrows money and contracts to repay it to provide something in the way of security for the promise to repay. However, all this act really does is to make a charge upon the highway fund for the repayment of moneys borrowed, much as other charges are made upon the fund by the highway act (R. S. 1933 Supp. 68-416, 68-417).

We find no constitutional infirmity in the statute (Laws 1934, Special Session, ch. 4). Judgment should be entered for defendant. It is so ordered.