No. 69,199

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDG-
WICK, KANSAS, *Appellant/Cross-appellee*, v. WILLIAM LYMAN
GRAHAM, JR., *et al.*, (WANETTA K. BROWN, *Appellee*, and MAR-
JORIE M. CURRIE, *Appellee/Cross-appellant*).

No. 69,200

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDG-
WICK, KANSAS, *Appellant/Cross-appellee*, v. WALDO F. BELL,
*et al.*, (ANN-JOLETA CAYWOOD, *Appellee/Cross-appellant*).

(864 P.2d 1141)

Opinion
filed December 10, 1993.

*Clarence D. Holeman*, assistant county counselor, argued the cause and
was on the briefs for appellant/cross-appellee the Board of County Com-
missioners of the County of Sedgwick, Kansas.

*Joseph Seiwert*, of Snider & Seiwert, of Wichita, argued the cause, and
*Rose M. Linneman*, of Legal Services of Wichita, of Wichita, was with him
on the brief for appellee/cross-appellant Ann-Joleta Caywood.

*Ted E. Knopp*, of Ted E. Knopp, Chartered, of Wichita, argued the cause
and was on the brief for appellee/cross-appellant Wanetta K. Brown.

*Michael T. Metcalf*, of Adams, Jones, Robinson & Malone, Chartered, of Wichita, argued the cause, and *Mert F. Buckley*, of the same firm, was with him on the brief for appellee/cross-appellant Marjorie M. Currie.

The opinion of the court was delivered by

McFARLAND, J.: These consolidated appeals concern two real estate tax foreclosure proceedings. Issues raised in the various appeals and cross-appeals concern:

1. The propriety of the district court's method of cost allocation under K.S.A. 79-2803;

2. the propriety of the district court's determination that certain costs should be included in the allocation; and

3. whether the district court erred in setting aside the sale of one tract.

The district court used the same method of cost allocation in each case. The court established the method of cost allocation in dispute in case No. 91 C 202 (appeal No. 69,200) and adopted said method in case No. 92 C 302 (appeal No. 69,199). There is no claim that the facts in the two cases warrant a different method of cost allocation being employed in each, or that the two cases are distinguishable in any respect. Rather, the plaintiff, Board of County Commissioners (Board), contends that the method of cost allocation it had prepared was fair, equitable, and in accordance with K.S.A. 79-2803, and that the district court erred in rejecting it in favor of the method developed by the court. For the sake of simplicity, we shall refer to appeal No. 69,200 as the Caywood appeal and appeal No. 69,199 as the Currie/Brown appeal.

The pertinent facts in the Caywood appeal are as follows. On June 20, 1991, the Board brought an action, pursuant to K.S.A. 1992 Supp. 79-2801, to enforce its tax liens for unredeemed real estate by public sale of 208 separate parcels of real estate. Ann-Joleta Caywood was the owner of parcel No. 52 situated at 4510 S. Handley Avenue, in Wichita. Ms. Caywood was duly served. On September 6, 1991, judgment was entered for delinquent taxes, penalties, and interest on said tract. On October 10, 1991, said tract was sold by public sale for $19,500.00. The sale was confirmed on October 25, 1991.

On November 6, 1991, an order approving apportionment of costs, charges, and expenses was filed by the Board. The order,

along with its attachments, set forth the Board's methodology of cost, expense, and balance allocation pursuant to K.S.A. 79-2803. Ms. Caywood's delinquent taxes, interest, and penalties totalled $2,703.11. Her cost allocation was $10,286.16, leaving her a refund of $6,510.73.

Thereafter, Ms. Caywood filed a motion to modify the orders concerning the cost allocation, contending that the Board's allocation of costs did not comply with K.S.A. 79-2803 in that the Board's method of allocation did not equitably apportion the costs of the tax foreclosure sale.

At the hearing, the Board presented the method it had utilized in allocating costs plus two alternative versions. Ms. Caywood presented her own version. The district court developed and adopted its own version. In so doing, the court held: (1) Its allocation of costs complied with K.S.A. 79-2803; (2) the Board should use that method to equitably apportion costs; (3) the Board's method of cost allocation was unconstitutional as violating the Fourteenth Amendment's due process and equal protection clauses; and (4) the Board's method of cost allocation was not equitable as required by K.S.A. 79-2803 because it resulted in the owner of the parcel which received the highest bid at the sale paying too large a share of the costs of the proceedings.

The Board's method referred to was the original version which had been utilized to make the initial allocation of costs herein.

The pertinent portion of K.S.A. 79-2803 is as follows:

"The court shall as soon as practicable after the sale equitably apportion the cost and charges, and the expenses of the proceedings and sale to each tract, lot or piece of real estate, and the total costs, charges and expenses of the proceedings and sale, less the amount thereof paid by redemptioners shall be deducted from the gross sum received from the sale of all of said lots, tracts, and pieces of real estate, and the balance shall be equitably apportioned to each tract, lot, or piece of real estate that sold for more than its share of the costs, charges, and expenses of the proceedings and sale, and tax liens on all real estate sold or redeemed in said action shall be satisfied and discharged of record."

At this point it is necessary to discuss the Board's method and the court's chosen method. Lest the opinion mire down in mathmatical calculations, we will, as much as possible, confine ourselves to a narrative statement of the methods and their results. Under the Board's method, the net cost of the sale ($36,183.96)

and the total selling price of all 112 parcels sold in the sale ($68,595.00) were utilized to determine a cost ratio of .52750142. Applying the cost ratio to the $19,500.00 selling price of the Caywood property resulted in a cost allocation to it of $10,286.16. After deducting this amount, plus the amount of the tax lien ($2,703.11), the Caywood balance refund was fixed at $6,510.73. The net effect of the Board's method is that each parcel's allocation of cost is a fixed percentage of that property's selling price. Note: In arriving at the net cost of sale, costs paid by owners redeeming prior to sale ($4,725.00) were subtracted from a gross cost figure of $40,908.96.

The district court, in its method, utilized the same $36,183.96 net cost figure. This was the amount to be allocated among the 112 parcels which were sold. The district court first divided the net cost figure by the number of parcels to arrive at a $323.07 first-round allocation. Many of the parcels sold for less than this figure. On these properties, the difference between the cost allocation and the selling price formed the basis for the second round of computation. This difference, in the aggregate amount, was $14,527.65. This was allocated among the 33 parcels selling for more than $323.07—giving a second-round allocation of $440.23. This procedure continued until all costs had been allocated. The Caywood property (parcel No. 52) ended up with a cost allocation of $1,161.12. Under the court's method, Ms. Caywood's refund of the balance would be $15,635.77. One of the major differences between the Board's method and the court's method is that, under the court's methodology, costs came off the top; that is, all proceeds from the sale of a particular tract were available to satisfy its cost allocation. For example, under the court's method, if a property sold for $50.00, the entire $50.00 went to costs, with the difference between the $50.00 and the $323.07 first-round allocation being carried over to the kitty making up the second-round allocation. Under the Board's version, only a fixed percentage of the selling price of each parcel went to cost allocation.

The procedural sequence of events has, to some extent, skewed the arguments on this issue. The Board's method of cost allocation was, apparently, initially presented to the court for approval on an ex parte rather pro forma basis. The journal entry was ap-

proved. It was only when Ms. Caywood's motion to modify that order was heard that the court scrutinized the method utilized in arriving at cost allocation and its effect as to the Caywood property. The court then found the method of cost allocation to be inequitable and developed its own method. As a result of this sequence of events, the Board, in essence, is asking us to review the matter on the basis of reviewing the Board's allocation as an act of the Board—valid unless arbitrary, capricious, unlawful, etc.

K.S.A. 79-2803 does not impose the duty of equitable allocation of costs on the Board. The court has the duty to allocate costs equitably. The Board's method is a method which it is proposing to the court as a means for the court to comply with its statutory duty. The court is not required to have a legal basis for rejecting this proposal before adopting some other method. Further, this is not a situation where one method is correct and all other possible methods are wrong. In this one case, as will be recalled, the Board presented three different methods at the hearing. The court's ultimate duty is to equitably apportion the costs of the particular sale before the court.

The court found the Board's method was inequitable as it resulted in too high a percentage of the costs being placed on the Caywood parcel. The court was not required to find the Board's method was inequitable before developing and adopting its own method of apportionment. The court also stated the Board's method was contrary to the Fourteenth Amendment's equal protection and due process clauses as to Ms. Caywood. However, the constitutional comments are basically surplusage in the context of the issue before us—and they, at most, are a further rationale in support of the court's finding that the Board's method was inequitable as to Ms. Caywood. The court did not strike down some official act of the Board on constitutional grounds. The court was giving reasons why the method proposed by the Board for the court to fulfill the court's statutory duty was unacceptable to the court. Under the circumstances, we believe it is unnecessary to determine the validity of the court's statements relative to constitutional requirements.

Under the facts and circumstances herein, we conclude that the Board has not shown that the method of apportionment

adopted by the court was contrary to K.S.A. 79-2803 or inequitable.

The same method of apportionment was adopted by the court in the Currie/Brown appeal. Ms. Currie's property was parcel No. 68 in a tax foreclosure action commenced on March 20, 1992. A total of 155 parcels were listed in the petition. Delinquent taxes, penalties, and interest on the Currie property were $6,069.04. The Currie property sold for $32,500.00. The Board sought to allocate costs utilizing the same method it had proposed in the Caywood case. The net costs to be apportioned were $19,621.18. The aggregate selling price of the properties sold was $102,340.00. The cost ratio figure was .19172543. Under the Board's method, the Currie property's cost allocation would be $6,231.03. As in the Caywood case, alternative methods of cost allocation were presented by the Board and Ms. Currie. The court adopted the same method it had utilized in the Caywood case. Costs of the sale were allocated equally among the 101 properties actually selling in the sale—$194.27 per parcel. For parcels selling for less than $194.27, the difference between the $194.27 cost and the actual selling price made up the kitty for the second round of allocation. There were 51 parcels in the second round of allocation. This process continued until all costs had been allocated. Under the court's method, Ms. Currie would have a balance of $26,084.96 refunded to her, representing a selling price of $32,500.00 less $6,069.04 in delinquent taxes, penalties, interest, and $346.20 in cost allocation.

Under the facts and circumstances herein, we conclude that the Board has not shown that the method of apportionment adopted by the court was contrary to K.S.A. 79-2803 or inequitable.

In their cross-appeals, Caywood and Currie contend that excessive and improper costs were included for allocation.

The first challenge is to the amount of docket fees included therein for cost allocation. In the Caywood case a docketing fee of $13,520.00 was paid (208 parcels × $65.00 filing fee). In the Currie/Brown case a docketing fee of $10,075.00 was paid (155 parcels × $65.00 filing fee).

Both Caywood and Currie contend the proper fee for the filing of one petition is $65.00 regardless of the number of parcels included therein upon which tax foreclosure is sought.

We review the issue as a question of law entitled to unlimited review. *Gillespie v. Seymour*, 250 Kan. 123, Syl. ¶ 2, 823 P.2d 782 (1991).

K.S.A. 1992 Supp. 60-2001 provides, in pertinent part:

"(a) *Docket fee.* Except as otherwise provided by law, no case shall be filed or docketed in the district court, whether original or appealed, without payment of a docket fee in the amount of $61.50 to the clerk of the district court.

. . . .

"(c) *Disposition of docket fee.* The docket fee shall be the only costs assessed in each case for services of the clerk of the district court and the sheriff. The docket fee shall be disbursed in accordance with K.S.A. 20-362 and amendments thereto.

"(d) *Additional court costs.* Other fees and expenses to be assessed as additional court costs shall be approved by the court, unless specifically fixed by statute. Other fees shall include, but not be limited to, witness fees, appraisers' fees, fees for service of process outside the state, fees for depositions, alternative dispute resolution fees, transcripts and publication, attorneys' fees, court costs from other courts and any other fees and expenses required by statute. All additional court costs shall be taxed and billed against the parties as directed by the court. No sheriff in this state shall charge any district court in this state a fee or mileage for serving any paper or process."

Note: Additional statutory charges bring the docketing fee to $65.00.

K.S.A. 1992 Supp. 28-170 provides, in pertinent part:

"(a) The docket fee prescribed by K.S.A. 60-2001 and amendments thereto shall be the only costs assessed for services of the clerk of the district court and the sheriff in any case filed under chapter 60 of the Kansas Statutes Annotated."

The only basis asserted to justify the payment of a separate $65.00 filing fee for each parcel included in the petition was that the administrative judge required it.

Clearly, the above-cited statutes contemplate that one $65.00 docket fee is required for the filing or docketing of a case. The petitions seeking tax foreclosure on the Caywood property (case No. 91 C 202) and on the Currie property (case No. 92 C 302) each constituted one case despite the fact that tax foreclosure was

sought on multiple parcels in each petition. There is nothing in the statutes relating to tax foreclosure proceedings indicating a separate docketing fee is to be charged to each parcel. K.S.A. 1992 Supp. 79-2801 speaks of "filing a petition" and that

"[t]he petition shall request that the court determine the amount of taxes, charges, interest and penalties chargeable to each particular tract, lot or piece of real estate, the name of the owner or party having any interest therein and that the court adjudge and decree the amount due to be a first and prior lien upon the real estate and that the same be sold at public sale for the satisfaction of the lien, costs, charges and expenses of the proceedings and sale and other necessary relief. The petition shall be filed in duplicate and a copy delivered by the clerk to the county treasurer, who thereafter shall accept no payments of taxes upon the real estate included in the petition except as provided by K.S.A. 79-2801 to 79-2810, inclusive, and amendments thereto."

K.S.A. 79-2802 provides:

"In such action the county attorney or county counselor may join as many parties as defendants as there are parties interested in the real estate described in the petition, whether such defendants are jointly interested in the property described or not, and may unite in one action all persons having or claiming to have any interest in any of the real estate described; but the court in its decree shall ascertain and determine the amount of taxes, charges, penalties and interest to the date of the filing of the petition, chargeable to each particular tract, lot, or piece of real estate, and in the decree state the name or names of the particular defendant or defendants who has or who appears to have any interest in the tract, lot or piece of real estate upon which a lien is fixed by order of the court."

The amount of the docket or filing fee required to be paid to commence an action in the district court is strictly a matter of statutory law, is uniform throughout the state, and may not be altered by local court rule or judicial fiat. The filing of each of the two petitions herein required a $65.00 filing or docketing fee per petition. We conclude that all filing or docketing fees paid in excess of that were improper and should not have been included in the allocation of costs. The district court erred in holding otherwise. On remand, cost allocation should be recomputed as to the Caywood and Currie properties, excluding the improper filing fee costs.

Ms. Caywood also cross-appeals on the issue of whether the district court improperly included excessive title search costs in its cost allocation. In her case the Board paid for 284 title searches

at $59.50 each ($16,898) and 49 "recertifications" at $24.50 each ($1,200.50). Ms. Caywood's property was not involved in any recertification. As only 208 parcels were included in the tax foreclosure petition, Ms. Caywood contends the title search costs included in the cost allocation were excessive.

Apparently there were 284 properties in the tax delinquent group for which foreclosure was contemplated. Some were deleted prior to the filing of the petition by virtue of the delinquent taxes being paid and for other reasons. In any event, only 208 parcels were considered ripe for foreclosure at the time of the filing of the petition.

On the showing herein, we cannot conclude that the district court erred in including the entire title search costs incurred in its allocation of costs.

This brings us to the only issue relative to appellee Brown. The Board contends that the district court erred in setting aside the sale of parcel No. 28 (Ms. Brown's property) on the basis of insufficiency of service. Service by publication was had as to Ms. Brown. The court held that Ms. Brown "was at all times in possession of the property and resides there, and she's entitled to notice." Ms. Brown was given 30 days to pay the delinquent taxes, costs, and penalty, or the property would be resold.

K.S.A. 1992 Supp. 60-307(a)(3) provides that service by publication may be made

"[i]n actions which relate to or the subject of which is real or personal property in this state, if any defendant has or claims a lien or interest, vested or contingent, in the property, or the relief demanded consists wholly or partly in excluding the defendant from any interest in the property, or in actions for partition or for foreclosure of a lien, if the defendant is a nonresident of the state or a foreign corporation or if the party with due diligence is unable to make service of summons upon the defendant within the state."

Once the plaintiff files an affidavit setting forth the rationale for seeking service by publication, it may proceed with service by publication. K.S.A. 1992 Supp. 60-307(c)(4). Within seven days after the first publication, a copy of the publication notice must be sent to the defendant. K.S.A. 1992 Supp. 60-307(e). Plaintiff followed those procedural steps.

The Board contends the "due diligence" requirement of K.S.A. 1992 Supp. 60-307(a)(3) was met. A RSTD (Residential Service—Tacked to Door) summons return was filed showing the summons was tacked to the door of the property on April 28, 1992. The summons gave no information as to prior attempts, but the Board's counsel stated this procedure is not utilized until two prior attempts at personal service had been made. No officer testified to any prior attempts. Service by certified mail was not attempted.

After the sale, Ms. Brown made a special appearance seeking to set aside the sale on the basis of lack of service of process. At the hearing thereon the following information was presented. The property had an appraised value of $31,800.00. The amount of delinquent taxes and interest against it was in the amount of $3,253.99. The parcel sold for $6,000.00 at the sale. Ms. Brown had lived at the residence for 30 years. She was in her 80's and had difficulty getting around. Her position is that her first knowledge of the tax foreclosure proceedings occurred when she was served with an eviction notice.

Inherent in the trial court's holding is a finding the Board did not exercise due diligence in making service of summons upon Ms. Brown. This is a negative finding. On appeal a negative finding will not be disturbed absent proof of an arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice. *EF Hutton & Co. v. Heim*, 236 Kan. 603, 610, 694 P.2d 445 (1985).

We find no error or abuse of discretion in the district court's order setting aside the sale as to Ms. Brown's property (parcel No. 28).

The judgment in each case is affirmed in part and reversed in part, and the cases are remanded for further proceedings.