The Honorable Jeff Peterson State Representative, 66th District State Capitol, Room 182-W Topeka, Kansas 66612-1504
Dear Representative Peterson:
You request our opinion regarding the Order of the Kansas Supreme Court dated March 14, 2002 (subsequently amended on March 22, 2002) imposing a surcharge on certain court costs and fees. Specifically, your questions are these:
 • "What is the authority for the Chief Justice to impose a surcharge on court costs?
 • "Is it within the authority of the Chief Justice to create a new fund in the State Treasury?
 • "Can money be made available to the Judicial Branch, by the means proposed by the Chief Justice, which has not been appropriated by the Legislature and, in fact, does the proposal usurp the authority of the Legislature?"[1]
As you know, the Court's Order characterizes the charge in question as an "Emergency Surcharge . . . [to] be utilized solely to make up the deficit in the [judicial branch] maintenance budget." The charge is to be imposed in accordance with the schedule attached to the Court's Order, and remitted by the district and appellate court clerks to the State Treasurer. The Order establishes a special fund that is not to be a part of the state treasury and directs the Treasurer to deposit the money into that fund. Finally, the Order provides that all expenditures from the fund shall be made upon warrants of the Director of Accounts and Reports issued pursuant to vouchers approved by the Chief Justice or her designee.
We note that the surcharge imposed by the March 22, 2002 Order of the Court is not characterized as a docket fee as that term is used in K.S.A. 2001 Supp. 60-2001. The Court has specifically stated that the surcharge is not a service or operational charge.[2] Additionally, the surcharge is not in the form of a tax.[3] The funds are not to be deposited into the state general fund and are to be used solely for judicial branch expenditures to maintain the court's operation.
The powers of the Judicial Branch of Government are threefold: Constitutional, statutory and inherent. We will address each, as they relate to the issues you raise.
Article 3, Section 1 of the Kansas Constitution provides as follows:
 "The judicial power of this state shall be vested exclusively in one court of justice, which shall be divided into one supreme court, district courts, and such other courts as are provided by law; and all courts of record shall have a seal. The supreme court shall have general administrative authority over all courts in this state."[4]
In construing Article 3, Section 1, the Kansas Supreme Court has said:
 "It is apparent from the unambiguous words of the constitution that the judicial power of Kansas is vested exclusively in the unified court system. This leaves for definition the term `judicial power.' It has been defined as the power to hear and determine a cause and the rights of the parties to a controversy, and to render a binding judgment or decree based on present or past facts under existing laws. 16 Am.Jur.2d, Constitutional Law § 307, p. 824. This definition, however, pertains only to the traditional concept of judicial power. The Constitution vests in the Supreme Court the general administrative authority over the court system. This is the area lacking historical definition. In State, ex rel., v. Dawson, 86 Kan. 180, 188, 119 P. 360 (1911), we held:
 "`When a constitution gives a general power, or enjoins a duty, it also gives, by implication, every particular power necessary for the exercise of the one, or the performance of the other.'
 "We conclude the Supreme Court has constitutional authority under the general grant of power of administration over the court systems to promulgate and enforce reasonable rules regulating judicial administration and court procedure as necessary for the administration of justice. See 20 Am.Jur.2d, Courts § 82, p. 444. Supreme Court rules have the force of law."[5]
The Court further stated that in areas over which the Court has constitutional authority, court rules take precedence over conflicting legislation.[6]
In addition to this constitutional grant of power, the Legislature has statutorily authorized the Supreme Court, through the Chief Justice, to supervise the "financial affairs of the court system." K.S.A. 20-101
provides in part:
 "The chief justice shall be the spokesman for the supreme court and shall exercise the court's general administrative authority over all courts of this state. The chief justice shall have the responsibility for executing and implementing the administrative rules and policies of the supreme court, including supervision of the personnel and financial affairs of the court system, and delegate such of this responsibility and authority to personnel in the state judicial department as may be necessary for the effective and efficient administration of the court system."[7]
Additionally, K.S.A. 2001 Supp. 60-2001(d) provides for court involvement in setting certain court costs that are not statutorily prescribed and K.S.A. 2001 Supp. 20-1a04 recognizes the Supreme Court's authority to direct disposition of any docket fees or other revenues received by the clerk of the appellate courts.
Finally, the Supreme Court possesses certain inherent authority, regardless of the existence of any statute or constitutional provision.[8] "Inherently, the supreme court must have the power to protect its own jurisdiction, its own process, its own proceedings, its own orders, and its own judgments. . . ."[9] Like the Constitution of the United States, the Kansas Constitution contains no express provision establishing the doctrine of separation of powers. However, it has been recognized that the very structure of the three branch system gives rise to the doctrine.[10] The essence of the separation of powers doctrine is that no one branch of government can have absolute control over the functions of either of the other two branches. Certainly, failure to fund the judiciary to the extent necessary for the courts to carry out their constitutional functions without an ability for the court to correct such failure would place too much power in the hands of the legislative branch of government and would therefore be a violation of the separation of powers doctrine. While the Kansas Supreme Court has never addressed this issue head on, numerous courts in other jurisdictions have, and their holdings are very instructive.[11]
 "`The separation of powers doctrine imposes upon the judiciary a proscription against interfering with the executive or legislative branches, as well as a duty to perform its constitutional and statutory obligations with complete independence. This latter aspect of the separation of powers doctrine places on courts the `affirmative obligation[s] to assert and fully exercise their powers, to operate efficiently by modern standards, and to protect their independent status. . . .' Carrigan, Inherent Powers and Finance, Trial, Nov.-Dec. 1971, at 22. The inherent powers which courts possess consist of: '[A]ll powers reasonably required to enable a court to perform efficiently its judicial functions, to protect its dignity, independence, and integrity, and to make its lawful actions effective. These powers are inherent in the sense that they exist because the court exists; the court is, therefore it has the powers reasonably required to act as an efficient court.' Id. (Emphasis in original.) Accordingly, this court has adopted the general rule that the judicial branch of government possesses the inherent power to determine and compel payment of those sums of money which are reasonable and necessary to carry out its mandated responsibilities."[12]
While certainly powerful, this inherent authority of the Court is not without limitation. It is reserved for exceptional cases where the threat to the judiciary is present and of significant magnitude.[13]
 "We are mindful that exercise of this inherent power is a duty which must be borne responsibly. A spirit of mutual cooperation among the legislative, executive, and judicial departments is unquestionably the people's best guaranty of constitutional government. It is therefore incumbent upon members of the judicial department to proceed cautiously, and with due consideration for the prerogatives of the executive department and the Legislature, whenever exercise of an inherent judicial power would bring us near the sphere of another department.
 "It has been wisely observed: `The very conception of inherent power carries with it the implication that its use is for occasions not provided for by established methods. . . . (Only w)hen . . . (established) methods fail and the court shall determine that by observing them the assistance necessary for the due and effective exercise of its own functions cannot be had, or when an emergency arises which the established methods cannot or do not instantly meet, then and not till then does occasion arise for the exercise of the inherent power.'"[14]
Ultimately, however, as long as the decision made is reasonable and not arbitrary or capricious, it is the judiciary that determines what is necessary under the circumstances.[15]
The Court has expressed its rationale for finding this to be a state of emergency necessitating this extraordinary measure in the first seven paragraphs of the March 22 Order. Further, the Court has limited its Order in several respects. With only two exceptions, the charges imposed by the Order do not exceed $5.00 in amount. It is apparently the Court's intent to raise only such revenues as it believes are needed to meet the current, basic needs of the judicial branch; it is not intended that such revenues will be used to finance something new or out of the ordinary. Finally, the Order is to sunset on June 30, 2003. It is not intended to be a perpetual charge or to replace the normal budgetary process.
With this background of authority in mind, we now address your specific questions.
The authority of the Kansas Supreme Court, through the Chief Justice, to impose a surcharge on court costs arises from the Kansas Constitution and various Kansas statutes, all read in light of the inherent authority possessed by the Supreme Court to take such action as is necessary to maintain its independence as a co-equal branch of government and insure that it is adequately funded to perform its mandated functions. Before this power may be exercised, in order that legislative and executive branch authority is properly considered, the Court must make a finding that peculiar circumstances exist requiring such an extraordinary measure.
The way in which the Court has chosen to exercise this authority differs from the procedure followed by most of the courts in the cases we have found and cited herein. Usually, the court issues an order or mandate to a legislative body to appropriate funds for a certain judicial use, or to an executive branch official to pay for certain expenses of the court. It occurs to us, however, that such an action by the Court would constitute more of an encroachment on another branch of government than the method that has been chosen in this instance. Further, there is precedent in Kansas for the Court setting certain charges by court directive. Supreme Court Rule 2.04 establishes an appellate court docket fee of $125. This fee has no statutory counterpart, nor are there specific statutory or constitutional provisions authorizing it. K.S.A. 2001 Supp. 20-1a04 does make reference to the fee, but ultimately leaves to the Court the determination of its disposition. To our knowledge, the Court's authority to establish this fee has never been challenged or even questioned.
The issue of whether the Court has authority to create a new fund in the state treasury is moot because the Court has amended its order to specify that the newly created Judicial Branch Emergency Surcharge Fund is not to be placed in the state treasury. However, the Court's authority to create any fund also emanates from its constitutional, statutory and inherent powers to take such action as is necessary to maintain its independence as a co-equal branch of government and insure that it is adequately funded to perform its mandated functions.
Finally, the issue of whether the Court has the power to make state money available for its use without appropriation by the Legislature is addressed by Kansas case law. Article 2, Section 24 of the Kansas Constitution provides that "[n]o money shall be drawn from the treasury except in pursuance of a specific appropriation made by law." Clearly, the general rule is that a legislative appropriation is necessary to make money available for any state agency's use, regardless what branch of government that agency happens to be in. However, the case law has recognized an exception to this general rule when the fund is not in the state treasury.
 "In the challenged act we are not concerned with funds which properly belong in the state treasury. Under this act funds are neither deposited in nor withdrawn from the state treasury by means of legislative appropriation or in any other manner. The constitutional provision relied on by the state does not apply to such an act."[16]
In this case, the Court was discussing proceeds from the sale of bonds that were to be placed in a bank account and spent for the purposes for which the bonds were issued (construction of student dormitories). InState ex rel. Boynton v. State Highway Comm.,[17] the Court further explained this rational in a situation dealing with expenditure of certain highway funds:
 "Since these funds are not required by the Constitution to find their way into the state treasury, and by statute do not do so, article 2, § 24, requiring appropriation of moneys from the state treasury, has no application. These funds are collected for a specific purpose. The Legislature would have no authority to appropriate them for other purposes. They are collected, segregated, set aside, and can be used for one purpose only, namely, the construction and maintenance of state highways. This is not the only fund the state has, which, although deposited with the state treasurer and disbursed by him under proper directions of other officials, does not find its way into the state treasury, and therefore does not require specific appropriation every two years by the Legislature. Lehnherr v. Feldman, 110 Kan. 115, 120, 122, 202 P. 624; State ex rel. v. Thompson, Treasurer, 115 Kan. 457, 461, 462, 223 P. 258; Kittredge v. Boyd, 136 Kan. 691, 701, 18 P.2d 563."[18]
The Judicial Branch Emergency Surcharge Fund is similarly to be deposited with the State Treasurer and disbursed by him, but is not to be within the state treasury and therefore is not subject to the constitutional provision requiring legislative appropriation.
We emphasize that the action taken by the Court is an extraordinary measure. If circumstances exist that cause the Court to believe it will not be adequately funded to meet its constitutional and statutory mandates, it has inherent authority to do what is necessary to cause the judicial branch to be adequately funded, even if this action encroaches upon areas traditionally left to other branches of government.
In conclusion, the Kansas Supreme Court has inherent authority to take action necessary to insure that it is adequately funded to carry out its judicial functions. The Court's order dated March 22, 2002 appears to be a proper exercise of this inherent power.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
CJS:JLM:jm
[1] We note that while the Order was signed by Chief Justice McFarland, as envisioned by K.S.A. 20-101, it is an Order of the Court. We therefore refer to it as such, rather than as an Order of the Chief Justice.
[2] Compare Board of Sedgwick County Comm'rs v. Graham, 254 Kan. 260,267 (1993).
[3] See Busby, Inc. v. Kansas Department of Agriculture, 29 P.3d 441,448 (Kan.App. 2001) (an inspection statute which does not yield excess revenue over costs and does not provide that the fee be placed in the state's general fund is not a revenue raising measure), citing R.B.Enterprises, Inc. v. State, 242 Kan. 241, 248-49 (1987).
[4] Emphasis added.
[5] State v. Mitchell, 234 Kan. 185, 194 (1983) (emphasis in original).
[6] Id. at 195.
[7] Emphasis added.
[8] State v. Brady, 156 Kan. 831 (1943). See also O'Coins, Inc. v.Treasurer of the County of Worcester, 287 N.E.2d 608, 614 (Mass. 1972); In Re 1978 Passaic County Budget Relating to Juvenile andDomestic Relations Court, 398 A.2d 1295, 1297 (N.J. 1979).
[9] Chicago, K. W.R. Co. v. Harris, 42 Kan. 223 (1889).
[10] State ex rel. Stephan v. Kansas House of Representatives,236 Kan. 45, 59 (1984). See also Van Sickle v. Shanahan, 212 Kan. 426,447 (1973).
[11] O'Coin's, 287 N.E.2d at 611-12 ("as an independent department of government, the judiciary must have adequate and sufficient resources to ensure the proper operation of the courts . . . [a]mong the inherent powers possessed by every judge is the power to protect his court from impairment resulting from inadequate facilities or a lack of supplies or supporting personnel."); Commonwealth ex rel. Carroll v. Tate,274 A.2d 193, 197. cert. denied sub nom. Tate v. Pennsylvania ex rel.Jamieson, 402 U.S. 974, 91 S.Ct. 1665, 29 L.Ed.2d 138 (Pa. 1971) ("the Judiciary must possess the inherent power to determine and compel payment of those sums of money which are reasonable and necessary to carry out its mandated responsibilities, and its powers and duties to administer Justice, if it is to be in reality a co-equal, independent Branch of our Government."); In re Court Room Offices of Fifth Branch of CircuitCourt, Milwaukee County, 134 N.W. 490, 495 (Wis. 1912) ("[Courts of general jurisdiction under the Constitution] have the incidental power necessary to preserve the full and free exercise of their judicial functions, and to that end may, in appropriate cases, make ex parte orders without formally instituting an action to secure the desired relief."); State ex rel. Donaldson v. Alfred, 612 N.E.2d 717, 719 (Ohio 1993) ("Ohio courts have the inherent power to order the funding necessary to fulfill their purposes."); 59 ALR3d 569 (1974); Jeffrey Jackson, "Judicial Independence, Adequate Court Funding and Inherent Judicial Powers," 52 Md. L. Rev. 217 (1993).
[12] Pena v. The District Court of the Second Judicial District,681 P.2d 953, 956 (Co. 1984) (some citations omitted).
[13] Beckert v. Warren, 439 A.2d 638, 643 (Pa. 1981).
[14] O'Coins, 287 N.E.2d at 615, quoting State ex rel. Hillis v.Sullivan, 137 P. 392, 395 (Mont. 1913). See also In re Alamance CountyCourt Facilities, 405 S.E.2d 125 (1991); Zylstra v. Piva, 539 P.2d 823
(1975); Alfred, 612 N.E.2d at 719-20; Pena, 681 P.2d at 957.
[15] Alfred, 612 N.E.2d at 719 ("The determination of necessary administrative expenses rests solely with the court, and another branch of government may not substitute its judgment for that of the court. . . . Funding orders enjoy a presumption of reasonableness.").
[16] State ex rel. Fatzer v. Board of Regents, 167 Kan. 587, 593
(1949).
[17] 139 Kan. 391 (1934).
[18] State Highway Comm., 139 Kan. at 394-95.