No. 47,615

BOARD OF COUNTY COMMISSIONERS OF STEVENS COUNTY, KANSAS, *Appellee*, v. (DON H. ALLDRITT, et al., *Defendants*,) ANTICLINAL ROYALTY COMPANY, *Appellant*, CLYDE BEYMER, JR., et al., *Appellees-Intervenors*.

(536 P. 2d 1377)

Opinion filed June 14, 1975.

*Leland E. Nordling,* of Hugoton, argued the cause, and *Bernard E. Nordling,* and *Ted F. Fay, Jr.,* both of Hugoton, were with him on the brief for the appellant.

*Paul B. Swartz,* of Wichita, argued the cause, and *W. F. Schell,* of Wichita, was with him on the brief for appellees-intervenors.

*Richard E. Samson,* County Attorney, was on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: This case arises out of a tax foreclosure action instituted by the plaintiff-appellee, Board of County Commissioners of Stevens County. The property in controversy is one-fourth of the mineral interests in a quarter section of land located in Stevens County.

The defendant-appellant, Anticlinal Royalty Company (hereafter referred to as Anticlinal), was the original owner and delin-

quent taxpayer. At the sheriff's sale on July 23, 1973, the mineral interest was bid in for $3,500.00 by appellee-intervenor, Clyde Beymer, Jr. The sale was confirmed on August 3, 1973. On November 27, 1973, George Forbes, as receiver for Anticlinal, filed an application to open the judgment and also an answer to plaintiff's petition in the foreclosure action. In his answer as receiver, Forbes alleged that he had been contacted by a stockholder of Anticlinal, that proceedings had been initiated in the district court of Tulsa, Oklahoma, wherein he was appointed receiver of the Anticlinal Corporation on November 16, 1973. It was alleged that Anticlinal was incorporated in the State of Oklahoma in 1930; that one Guy M. Martinet was president of the corporation and majority stockholder therein. The answer further alleged that the corporation became inactive in 1950, but that Martinet kept in contact with Republic Natural Gas Company of Dallas, Texas, the predecessor of Mobil Oil Company of Dallas, Texas, the present operator of the lease in question. Guy Martinet died a resident of Milwaukee, Wisconsin, in 1963, and after that date Richard L. Novotny, an attorney representing the estate of Mr. Martinet, was in contact with Mobil Oil. Anticlinal based its claim for relief on two theories— (1) That it was never served with summons in said action other than by newspaper publication which was inadequate for the reason that plaintiff had failed to make a reasonable effort to ascertain the address of Anticlinal or its agent; and (2) that the description of the interest foreclosed in the foreclosure proceedings did not adequately describe the mineral interests of Anticlinal. The adverse rulings of the trial court on each of its two theories for relief are challenged by Anticlinal in this appeal.

Following the filing of Anticlinal's application and answer, Mr. Beymer and Lynn C. Stewart and Katharine S. Shell, who had purchased a one-third interest each in the mineral interest from Beymer, filed motions to intervene which were sustained by the trial court on January 8, 1974. The matter was then set down for trial. The parties submitted considerable evidence which was essentially undisputed.

Mr. Forbes testified that Anticlinal apparently owned mineral interests in both Stevens and Morton counties; that it had been dormant since 1950; that Guy Martinet had been a stockholder in his lifetime, but did not own a controlling interest in the company; the corporation's records had been destroyed; and that there were

no records or other showing of any current directors or officers, nor a resident agent in either Oklahoma or Kansas. Mr. Forbes further testified: "I don't know how you could get personal service on anyone in authority with this corporation, no." The county treasurer and an abstractor testified concerning the county records bearing upon the matter. The county attorney of Stevens County, Mr. Jeff Johnson, testified concerning his efforts to obtain service upon Anticlinal.

Concerning the county attorney's efforts to obtain service upon Anticlinal, the trial court found:

"The record shows that Mr. Jeff Johnson, the County Attorney of Stevens County, Kansas, conducted the tax foreclosure suit on behalf of the County and that with respect to the mineral interest in question, the County Attorney caused a Mrs. Lilly White, of the L. L. Morgan Abstract Company, to make a search with respect to the whereabouts of the Anticlinal Royalty Company, who was the record owner of such mineral interest. Mrs. White checked the original recorded mineral deed to Anticlinal Royalty Company and the rendition sheets in the County Treasurer's Office and reported to the County Attorney an address for Anticlinal Royalty Company of 311 Masonic Building, Shawnee, Oklahoma, 'c/o Guy Martinet'. Mrs. White also found an address in Milwaukee, Wisconsin for a Guy Martinet regarding the mineral interest in the County Treasurer's Office, however, this address did not refer to Anticlinal Royalty Company (contrary to applicant's proposed finding No. 8) and was not reported to Mr. Johnson, the County Attorney. Mr. Johnson proceeded to attempt to obtain personal service on Anticlinal Royalty Company, the owner of the mineral interest, and return was received showing no service in Oklahoma, the only address shown for defendant Anticlinal Royalty Company. The County Attorney thereupon attempted to determine if the corporation had a resident agent in the State of Kansas and was notified by the Secretary of State of Kansas that the company had no resident agent. The lack of a Kansas resident agent for the corporation was also corroborated by the testimony of Mr. George Forbes, the recently appointed Receiver for the company. Thereafter the County Attorney proceeded to obtain publication service on Anticlinal Royalty Company."

We turn to Anticlinal's contention that the publication service employed by the county failed to provide notice of the foreclosure proceedings as required by law. K. S. A. 79-2801, *et seq.*, and K. S. A. 1974 Supp. 79-2804, *et seq.*, provide a full, complete and comprehensive procedure for the foreclosure of tax liens and the sale of real estate thereunder. (*Pierce v. Board of County Commissioners,* 200 Kan. 74, 434 P. 2d 858.) K. S. A. 79-2801 provides that summons shall issue and be personally served or publication made as provided in other cases under the code of civil procedure.

K. S. A. 1974 Supp. 60-307 of the code of civil procedure de-

lineates the cases in which service by mail or publication is permissible. The instant case falls within the provisions of subsection (*a*) (3) which reads:

"In actions which relate to or the subject of which is real or personal property in this state, where any defendant has or claims a lien or interest, vested or contingent, therein, or the relief demanded consists wholly or partly in excluding him from any interest therein, or for partition or for foreclosure of a lien, and such defendant is a nonresident of the state or a *foreign corporation* or where plaintiff with due diligence is unable to make service of summons upon the defendant within the state." (Emphasis supplied.)

The record shows the county attorney attempted personal service on Guy Martinet and Anticlinal at its address in Shawnee, Oklahoma. This was the only address of Anticlinal appearing upon the Stevens County records. The summon's was returned "not known at this address." The county attorney then, through the Kansas Secretary of State's Office, sought to ascertain whether there was a resident agent for Anticlinal in Kansas. Unable to effect personal service or to locate Anticlinal, or a resident agent thereof, the county attorney proceeded with publication service permitted in this case by the provisions of 60-307 (*a*) (3). A proper affidavit for service by publication was executed and filed in compliance with the provisions of the statute. We believe the record supports the trial court's ruling that publication service on a foreign corporation in this case was in compliance with pertinent statutes and met the constitutional requirements of notice set forth in decisions of this court.

In the recent cases of *Chapin v. Aylward,* 204 Kan. 448, 464 P. 2d 177, and *Pierce,* supra., we dealt with actions brought by individuals to vacate a tax foreclosure sale and held that service by publication, under the facts in each case, was insufficient to meet the requirements of constitutional due process. In this connection we held in *Pierce,* supra:

"Where the names and addresses of adverse parties are known or easily ascertainable, notice of pending proceedings by publication service, alone, is not sufficient to satisfy the requirements of due process under the 14th Amendment to the federal Constitution or § 2 of the Bill of Rights of the Kansas Constitution." (Syl. ¶ 6.)

In *Chapin* we followed our holding announced in *Pierce,* but recognized this qualification:

". . . We do not mean to imply—nor has the supreme court of the United States ever declared—that constructive service by publication will never satisfy constitutional requirements of due process. Indeed, there un-

doubtedly are many instances where the notice provided by publication service is the only method possible. . . ." (p. 455.)

We believe the rule of *Pierce* and *Chapin* is applicable herein to the extent that where the delinquent taxpayer is a foreign or domestic corporation and its address, or that of an officer, partner or a resident, managing or general agent (K. S. A. 1974 Supp. 60-304 [*e*]) is readily ascertainable notice of pending proceedings by publication service, alone, is not sufficient to satisfy the requirements of constitutional due process.

In the instant case, however, there was no address ascertainable for Anticlinal or a partner, officer, or agent thereof. The corporation had been dormant for more than twenty years. True, there was an address of Martinet in care of Novotny, but no claim is made that service upon Anticlinal could have been made by means of this address. There is no showing that either Novotny or Martinet had any official capacity or agency connection with Anticlinal. In fact, as the trial court pointed out, Mr. Forbes testified there was no way that service could be had upon the corporation.

Anticlinal suggests that Mobil Oil, present operator of the lease, should have been notified. The record shows that Mobil Oil possessed no more knowledge concerning Anticlinal and its officers than did the county officials. Mr. Forbes testified that Mobil Oil had been impounding royalties because it did not know whom to pay them to.

The fact that Anticlinal became a dormant corporation and had no resident agent in either Kansas or Oklahoma is due to the fault of the owners of the corporation. The only address of Anticlinal known to plaintiff was the Shawnee, Oklahoma, address. No other address for Anticlinal, its officers or agents was ascertainable, thus, the trial court's ruling in this regard must be affirmed.

We turn next to Anticlinal's contention that the publication notice did not adequately describe its mineral interest. In this connection 79-2801 provides that when notice of a foreclosure sale is given by publication, that notice must contain a description of the real estate. The criteria for determining the sufficiency of a real estate description used in a tax foreclosure proceeding is set forth in K. S. A. 79-2316, which reads in pertinent part:

". . . All of such descriptions which shall indicate the real estate intended with ordinary and reasonable certainty and which would be sufficient between grantor and grantee in an ordinary conveyance, shall be sufficient."

Anticlinal's property was described in the tax foreclosure proceeding as follows:

"An undivided 40 acre interest in and to all of the oil, gas, and other minerals in and under the SE/4 of Section 3 in Township 34 South of Range 39 West 6th P. M. in Stevens County, Kansas."

Anticlinal's interest as shown by the mineral deed is described as follows:

". . . An undivided one-fourth interest in and to all oil, gas and other minerals in and under, and that may be produced from the following described lands situated in Stevens County, State of Kansas, to-wit:

"Southeast Quarter (SE ¼) of Section Three (3) in Township Thirty-Four (34) of Range Thirty-Nine (39), West of the 6th P. M., containing 160 acres, more or less. . . ."

Anticlinal argues the description used by the county varies to such an extent from the deed description that it fails to describe its interest. Anticlinal also contends the terminology used in the description inadequately apprised prospective bidders of the property's real value and, thus, prevented it from bringing a fair price. These points are not well-taken. The wording used in the published description of Anticlinal's interest, although not precisely that employed in the mineral deed, is sufficiently definite to permit identification and conveyance.

K. S. A. 79-2316 (then appearing as G. S. 1947 Supp. 79-2316) was referred to in *Board of County Comm'rs of Cherokee County v. Smith,* 169 Kan. 623, 220 P. 2d 131, a tax foreclosure action wherein it was said that the settled law of this state is that a tax deed must be such that with ordinary and reasonable certainty it can be determined what has been sold. (See, also, *Marion County Comm'rs v. Clark,* 157 Kan. 132, 138 P. 2d 449; and *Kruse v. Fairchild,* 73 Kan. 308, 85 Pac. 303.) There is no indication that the purchaser (Mr. Beymer) did not know what he was buying. In fact, we are informed in his brief that it is common knowledge within the oil and gas business that parties who are engaged in buying and selling mineral interests and royalties commonly refer to mineral acres and royalty acres.

The judgment is affirmed.

FROMME, J., not participating.