No. 84,749

THE BOARD OF COUNTY COMMISSIONERS OF RENO COUNTY,
KANSAS, and CHARLES WALL and TERRY WALL, *Appellants*, v.
MICHAEL L. AKINS, *et al.*, *Appellees*.

(21 P.3d 535)

Opinion filed April 20, 2001.

*Alan L. Rupe*, of Husch & Eppenberger, LLC, of Wichita, argued the cause, and *Kelly J. Johnson*, of the same firm, was with him on the briefs for appellants.

*Kenneth E. Peirce*, of Peirce Law Office, of Hutchinson, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

ABBOTT, J.: This case involves the sufficiency of the notice given in a tax foreclosure sale. The district court refused to confirm the sale of real property located in Reno County, Kansas. The property had been purchased at the tax foreclosure auction by Charles and Terry Wall. The Board of County Commissioners of Reno County, Kansas, and the Walls appeal the trial court's refusal to confirm the sale.

We are concerned with a fairly large parcel of valuable farmland consisting of the south two-thirds of a half section of farmland, less a 25-acre piece sold to the farm tenant who has built and occupies a home on the 25 acres.

By way of background, the land was originally owned by Rachael Cox. Cox had two children, and upon her death the children, Louisa C. Ratliff and Sylvester Cox, inherited the property.

Louisa had two children, Daniel and Sara. Nearly 25 years ago, Louisa purchased and occupied the family home at 34 North Jessup, Portland, Oregon, and resided there until her death in 1982. Sara has resided at that address for the past 18 years and still resides there. Sylvester never married and had no children. He lived at 34 North Jessup in Portland, Oregon, until his death in 1998.

For a short period of time, Daniel resided at 9945 N.E. Sandy, Space 37 (a trailer court) in Portland, Oregon. Sometime prior to 1994, Daniel moved to a different address in Portland and has subsequently moved to Saipan where he currently resides.

For convenience, we will refer to the real estate as Item No. 3160 (Reno County's designation of the property). There are no improvements on that real estate. However, there are improvements on the 25 acres owned by an unrelated farm tenant.

Reno County utilizes a map work card to track addresses on the County's property tax rolls. The County mails tax statements using the most recent address on the card.

Starting in 1991, the Reno County tax rolls show an address for Sara at 9945 N.E. Sandy, Space 37, Portland, Oregon 97220, where the County mailed the tax statements on Item No. 3160 from 1991 through 1998. The real estate taxes for 1991, 1992, and 1993 were paid. No taxes have been paid since 1994.

Sylvester had apparently not received any notice of taxes due for at least 20 years. Both Daniel and Sara deny receiving any tax notices from Reno County since approximately 1993.

As of March 1, 1999, Daniel and Sara owed $3,610.20 in back taxes and $892.61 in interest on Item No. 3160. On March 3, 1999, the County began tax foreclosure proceedings against the property. The county counselor mailed a copy of the petition and summons in the tax foreclosure case to Daniel and Sara at 9945 N.E. Sandy, Space 3, Portland, Oregon 97220. The United States Postal Service returned this letter as undeliverable because no such number existed.

The County thereafter obtained service of process by publication. By affidavit, the county counselor indicated that the addresses of Daniel, Sara, and Sylvester were unknown or outside the state of Kansas. Publication notice was published in the Hutchinson News every Monday for 3 consecutive weeks, beginning June 14, 1999, and ending June 28, 1999.

Neither Daniel nor Sara responded to the published notice, and on July 28, 1999, the Reno County District Court entered judgment in rem against Item No. 3160 in the amount of $4,717.24. The district court further ordered a sheriff's sale of the property if it was not redeemed within 10 days of the journal entry. The property was not redeemed.

For 3 consecutive Tuesdays, beginning August 10, 1999, the Reno County sheriff published a notice of the sale of property. The Walls submitted a high bid of $58,000 to purchase the property.

During the tax sale, the county counselor noticed the size of the acreage being sold and that he had sent the mailed notice to the wrong address. Instead of mailing the notice to Space 37, he had mistakenly mailed the notice to Space 3. Within 2 days after the tax sale, the county counselor sent out a second notice, via certified mail, to Sara at 9945 N.E. Sandy, Space 37, Portland, Oregon 97220. The United States Postal Service returned this letter as undeliverable, just as it had the previous letter sent to Space 3.

Daniel and Sara eventually contacted the county counselor regarding Item No. 3160. Evidently, a Hutchinson lawyer for Daniel and Sara had heard about the tax sale from the agricultural tenant of the property. The county counselor advised the district court that Daniel and Sara would probably file an objection to the sale. The district court stayed the confirmation of the sale on Item No. 3160 until a hearing could be held.

Daniel and Sara subsequently filed an objection to the confirmation of the sale of Item No. 3160 on the grounds that their due process rights had been violated. They argued that the County had failed to make a reasonable effort to locate and notify them of the pending tax foreclosure.

The district court issued a memorandum opinion setting aside the sale of Item No. 3160. The appellants timely filed this appeal. This court has jurisdiction pursuant to K.S.A. 20-3018(c).

The appellants argue that the district court erred in refusing to confirm the sale of Item No. 3160. Daniel and Sara argue, on the other hand, that the district court correctly refused to confirm the sale and that their due process rights were violated through the use of service by publication only.

This court reviews the district court's refusal to confirm a tax foreclosure sale under an abuse of discretion standard. *Board of Sedgwick County Comm'rs v. Graham*, 254 Kan. 260, 269, 864 P.2d 1141 (1993). Judicial discretion is abused when no reasonable person would take the view adopted by the trial court. *State v. Williams*, 268 Kan. 1, 8, 988 P.2d 722 (1999). The party asserting the trial court abused its discretion bears the burden of showing such abuse of discretion. *State v. Saleem*, 267 Kan. 100, 108, 977 P.2d 921 (1999).

K.S.A. 79-2801 *et seq.* governs judicial foreclosures and the sale of real estate by a county. K.S.A 79-2801 specifically authorizes service by publication. Service by publication, however, must conform to the statutes set out in the code of civil procedure and case law interpreting them. See, *e.g.*, K.S.A. 60-307.

In *Mullane v. Central Hanover Bank Tr. Co.*, 339 U.S. 306, 94 L. Ed. 2d 865, 70 S. Ct. 652 (1950), the United States Supreme Court discussed the constitutionality of service by publication and the implications service by publication has on due process rights. The Court stated:

"Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.

. . . .

"Against this interest of the State we must balance the individual interest sought to be protected by the Fourteenth Amendment. This is defined by our holding that 'The fundamental requisite of due process of law is the opportunity to be heard.' [Citation omitted.] This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest.

. . . .

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [Citations omitted.] *The notice must be of such nature as reasonably to convey the required information,* [citation omitted] *and it must afford a reasonable time for those interested to make their appearance.* . . .

"But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected. . . .

"*It would be idle to pretend that publication alone as prescribed here, is a reliable means of acquainting interested parties of the fact that their rights are before the courts.* It is not an accident that the greater number of cases reaching this Court on the question of adequacy of notice have been concerned with actions founded on process constructively served through local newspapers. Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the

area of the newspaper's normal circulation the odds that the information will never reach him are large indeed.

.  .  .  .

" . . . The ways of an owner with tangible property are such that he usually arranges means to learn of any direct attack upon his possessor or proprietary rights. . . . When the state within which the owner has located such property seizes it for some reason, publication or posting affords an additional measure of notification. . . . *'It is the part of common prudence for all those who have any interest in [a thing], to guard that interest by persons who are in a situation to protect it.'* " (Emphasis added.) 339 U.S. at 313-16.

*Mullane* does not stand for the proposition that service by publication deprives a party of their due process rights. Service by publication, without more, however, is unconstitutionally invalid. The Court in *Mullane* admitted that service by publication is nothing more than an exercise in futility a majority of the time. Service by publication will, more often than not, fail to provide notice to affected parties. Failure to provide actual notice, however, will not prevent a judicial foreclosure sale of real estate. A party's due process rights are protected by what occurs *prior to and in addition to* the attempted publication service. In *Mullane*, nothing was done prior to service by publication. The Court in *Mullane* approved of service by publication where addresses were not known, but disapproved of service by publication where addresses of parties could be reasonably ascertained. 339 U.S. at 317-18. See also *Graham*, 254 Kan. at 269 (affirming trial court's decision to set aside sale of property where service by mail on known address was never attempted although service by publication was attempted).

In *Pierce v. Board of County Commissioners*, 200 Kan. 74, 82-86, 434 P.2d 858 (1967), this court summarized the due process requirements discussed in *Mullane* and stated:

"The requirements of due process contemplate that, where feasible, notice of legal proceedings be given by means reasonably calculated to inform all parties having legal rights which might be directly and adversely affected thereby."

"Where the names and addresses of adverse parties are known or easily ascertainable, notice of pending proceedings by publication service, alone, is not sufficient to satisfy the requirements of due process under the 14th Amendment to the federal Constitution or § 2 of the Bill of Rights of the Kansas Constitution." 200 Kan. 74, Syl. ¶¶ 5, 6.

In *Board of County Commissioners v. Knight*, 2 Kan. App. 2d 74, 574 P.2d 575 (1978), the Court of Appeals considered whether service by publication was sufficient to satisfy due process requirements. In *Knight*, personal service was attempted on the property owner, Martha Knight, at her home address in Kansas City, Kansas, unsuccessfully, 10 to 12 times. After unsuccessfully attempting to serve Knight in person, the county filed an affidavit for service by publication. Default judgment was entered, foreclosing the county's lien for delinquent taxes on the property. The property was sold at a tax foreclosure auction and later confirmed by the district court. Subsequently, Knight filed a motion alleging that she was not given notice of the action, despite the fact that she had lived at the same address for several years. The *Knight* court noted that where the addresses are known, service by publication alone is not sufficient to satisfy due process requirements. The court also noted that if an address is not known, there must be a "reasonable effort" to find the address. The *Knight* court held that Knight's due process rights were violated by the failure to attempt to reach her via the United States Postal Service and that publication alone, in this instance, was insufficient because Knight's address was known by the county. 2 Kan. App. 2d at 77-80.

In *Board of County Commissioners v. Alldritt*, 217 Kan. 331, 536 P.2d 1377 (1975), this court upheld a foreclosure sale where the county was not able to ascertain the address of a dormant corporation with no resident agent in Kansas. We focused on the duty of the property owner to maintain communication with the county in holding that, because there was no reasonable way to obtain a correct address and provide notice by the United States Postal Service, service by publication was acceptable. 217 Kan. at 333-35.

In the present case, service was attempted via the United States Postal Service at the last known address given to the County for the purposes of collecting property tax. All attempts by mail were unsuccessful. The question is, therefore, whether the County "knew" the address to which proper service via mail could be effectuated or whether the County could have reasonably ascertained a correct address. The initial burden was on the appellees to show

that the County did not make a reasonable effort to determine a correct address.

There is no question that the County did not have the correct current address to which it could send the tax statements. The County was notified that the address changed from 34 North Jessup Street, to 4030 Gladstone # 3, and then to 9945 N.E. Sandy, Space 37. Tax statements were mailed to the address on N.E. Sandy from 1991 to 1993 and all taxes were paid for those years. No taxes were paid from 1994 through 1998, although tax statements were mailed to the N.E. Sandy address as they had been since 1991. Although Sara testified that she has lived at the North Jessup Street address for the last 18 years, there was no way for the County to have "guessed" that it should go back and send notices to any and all previous addresses on record in order to provide notice to the property owners.

The next question is whether the County could have reasonably ascertained the proper address in which to send notice. The appellees argue that the following methods would have resulted in finding Sara: (1) by contacting the tenant on the property in Reno County who knew the correct addresses for Daniel and Sara; (2) the Reno County Farm Service Association of the United States Department of Agriculture showed the address of Sara to be on 34 North Jessup in Portland, Oregon; and (3) the Register of Deeds showed the address of Daniel and Sara to be at 34 North Jessup in Portland, Oregon, on an older document dated August 24, 1987.

The appellants argue that they made reasonable efforts to locate Daniel and Sara. They assert that they: (1) sent notice via the United States Postal Service to the most recent, although incorrect, address they had which was the address on N.E. Sandy; (2) sent another notice via the United States Postal Service to the corrected N.E. Sandy address; (3) referenced "the various telephone books in Reno County"; and (4) checked the Hutchinson City Directory. The appellants further argue that personal service was not possible as there were no residential structures on the property.

Our scope of review is to determine whether the district court's findings are supported by substantial competent evidence and whether such findings are sufficient to support the conclusions of

law. *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 377, 855 P.2d 929 (1993). The question also arises as to whether the district court abused its discretion. Here, the district court found that the only addresses for the landowners were in the Oregon. The only effort made to locate the Oregon residents consisted of the county counselor checking the Southwestern Bell telephone directory for Hutchinson, Kansas, the Feist area-wide telephone directory for the Hutchinson area, the Polk's City Directory for Hutchinson, Kansas, and the records of the Reno County Clerk's and the Reno County Treasurer's offices. No effort was made to see who farmed the land.

We readily agree that a taxpayer has some duty to keep a county informed of the taxpayer's address and to pay property taxes. However, when we are dealing with substantial and/or valuable parcels of real estate (here it appears the land was worth in excess of $150,000), the efforts taken by the County to locate the landowner should be proportional to the use and value of the property. While we do not hold that all of the items listed are necessary to make a reasonable effort, we agree with the district court that if anyone had driven by the property, they would have seen the 25-acre tract carved out of Item No. 3160 where the farm tenant lived. The tenant had the correct address for both Daniel and Sara. Although there might be some question about confidentiality, the Reno County office of the United States Department of Agriculture had the correct names and addresses of the landowners, as well as the tenant, and at a bare minimum could have forwarded letters containing a notice to them if requested to do so. Despite all of the Portland addresses and the foreclosure petition being returned as undeliverable, no effort was made to contact sources to obtain a correct Portland address. No one contacted a real estate agent in Reno County in an effort to find out who was the owner or tenant of the property. Prior to the auction being completed, the county counselor knew that the notice had been mailed to the wrong address but did nothing until 2 days after the sale.

We cannot say the district court abused its discretion, and there is sufficient evidence to support the district court's findings and conclusion.

The decision of the district court is affirmed.