(132 P.3d 1004)

No. 94,894

Board of Jefferson County Commissioners, *Appellees*, v. Judith M. Adcox, *et al.*, *Appellants*.

Opinion filed April 28, 2006.

*Vernon L. Jarboe* and *Martha A. Peterson,* of Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C., of Topeka, for appellants.

*Steven C. Montgomery,* county counselor, for appellees.

Before RULON, C.J., MARQUARDT and HILL, JJ.

HILL, J.: In this tax foreclosure appeal, there are two separate counts where two couples, Kenneth and Sharon Schrage and Terry and Yvonne Hummer, claim they did not receive legally sufficient notice and ask us to set aside the sheriff's sales of their Jefferson County real estate tracts. The Schrages are correct, and the Hummers are not.

In the Schrages' case, Jefferson County officials relied upon service by publication after an attempt to personally serve the couple in Douglas County failed. Generally, in a tax foreclosure action, service by publication is disapproved if the address of the parties can be reasonably ascertained. Here, Kenneth and Sharon Schrage lived on the real estate tract in question. Furthermore, they had both been served with process at least seven times by an officer from the Jefferson County Sheriff's Department during the 3-year period preceding the tax sale. Because their address could have been reasonably ascertained, we hold the publication notice was insufficient and denied them due process of law. We reverse.

In the Hummers' case, Terry Hummer was the president, sole stockholder, and resident agent of RVH, Inc., a corporation that was the title owner of a mobile home park in Jefferson County. The Hummers live in Topeka, and after their home was visited twice by Shawnee County process servers trying to serve the Jefferson County process, Terry Hummer called the Shawnee County Sheriff's office advising it that either he or an employee would be down to pick up the papers. An RVH, Inc. maintenance worker received the foreclosure petition and summons at the sheriff's office after telling the deputy he had been sent to pick up the papers. Because that worker was clothed with the apparent authority to receive process, we hold that personal service was achieved in this instance and affirm the judgment.

Because each case is unique, we will first review common facts and then focus on events important to each count. Finally, our analysis will concentrate on each count individually.

## Facts Common to Both Counts

On January 8, 2003, the Board of Jefferson County Commissioners (the County), filed a tax foreclosure action that involved delinquent real estate taxes on more than 500 parcels of land. Each parcel was listed in a separate count. A title search performed on Count 286 revealed that Kenneth D. Schrage and Sharon A. Schrage, of 802 Oak, Lawrence, Kansas 66044 (the Lawrence address), were interested parties with respect to the real estate. Title searches performed on Counts 257, 258, and 264 revealed that Terry Hummer, Yvonne Hummer, and RVH, Inc., all with an address of 4431 N.W. Greenhills Road, Topeka, Kansas, 66618, were interested parties with respect to those counts.

On November 22, 2004, the attorney for the County filed an affidavit seeking to serve all of the defendants in the foreclosure action by publication notice. The affidavit stated that the locations of approximately one-half of the defendants were unknown but did not list the specific defendants whose whereabouts were unknown.

Notice of the tax foreclosure lawsuit was published in The Oskaloosa Independent on September 30, October 7, and October 14, 2004. The publication included Count 286 (the Schrages' tract) and Count 257 (RVH, Inc.'s tract) in the notice. An affidavit of publication was later filed on August 2, 2005.

The County sought default judgment, which was granted on December 13, 2004. A sheriff's sale was ordered to be held on January 21, 2005. Notice of the sale was published in The Oskaloosa Independent on December 16, 23, and 30, 2004. The affidavit of publication of that notice was filed on August 2, 2005. At the sheriff's sale, the Schrages' property was sold for $55,500 and RVH, Inc.'s parcel was sold for $36,500.

## Matters Unique to the Schrages' Case

Not quite a month after the sheriff's sale on February 11, 2005, the Schrages filed a motion to set aside the default judgment obtained by the County as a result of the publication notice. The Schrages claimed that they did not receive notice of either the default judgment or the sale of the property and that they were not properly served.

At the April 15, 2005, hearing on their motion, the Schrages were delinquent on multiple personal and real estate taxes from various years due to the County. The County claimed the total of the overdue taxes equaled $24,989.83. Ultimately, in June 2005, the district court denied Schrages' motion to set aside the default judgment.

Jefferson County records available at the time of the filing of the foreclosure action are revealing but not conclusive concerning the Schrages' correct address. The Schrage tract is a 42-acre site with an address of 11585 U.S. 59 Highway, Oskaloosa, Kansas (the U.S. 59 address). In December 1997, the County issued a building permit to Ken Schrage for construction of a dwelling. The application for the building permit, as well as the permit itself, lists the Lawrence address for Ken Schrage but also listed the U.S. 59 address as his new address. Furthermore, an application for a permit to build a septic tank, dated December 16, 1997, indicated Kenneth's address was the Lawrence address, but also listed the U.S. 59 address as a "New Address."

The Jefferson County Treasurer testified that her office had several addresses listed for the Schrages but that the Lawrence address was the one that most commonly appeared on her records. She further stated that her office searched for addresses for the Schrages by using motor vehicle records, but no vehicles were registered in their name. The Schrages' 2002 personal property tax statement was mailed to the U.S. 59 address but was returned as undeliverable. It was also sent to the Lawrence address but was returned by the post office.

The Schrages' own conduct contributed to the confusion about their correct address. Sharon Schrage testified that she and her husband moved from the Lawrence address to the U.S. 59 address in March or April of 1997. Sharon further testified that in February of 2002 or 2003, a fire destroyed their residence at that address. After the fire she, began living in a "fifth wheel trailer" on the Oskaloosa property. The fifth wheel trailer was physically placed inside a Morton building on the real estate. As of April 15, 2005, the Schrages had not obtained a sewer permit for the trailer and had not placed the title for the trailer in their name.

Furthermore, Sharon also admitted to having two addresses in Nortonville as well as a P.O. Box address in Oskaloosa. She explained that she needed two addresses in Nortonville because she had a business. Schrage further admitted that no vehicles had been registered under the name "Schrage" in 2003, 2004, or 2005, because Sharon would not have been able to register her vehicles in Jefferson County under the name "Schrage" due to a policy preventing registration when outstanding property taxes are due. Sharon testified that her maiden name was "Tootle" and that she used that name for legal purposes. Sharon stated that she had a handicapped son, and she was made his conservator. Sharon testified that her attorney told her that it was legal if she used "Tootle-Schrage" as her last name until her son died.

Despite all of this behavior, there was evidently no problem in serving the Schrages with legal process in Jefferson County. Robert Chartier, an officer with the Jefferson County Sheriff's office, testified that he had served Kenneth Schrage at least seven times within the previous 3 years. Chartier claimed that all but one or two times he obtained service on Kenneth at the Schrages' restaurant in Nortonville, which is also within Jefferson County. Chartier went on to state that the times he did not serve Kenneth at the restaurant, he obtained service on him at his address on U.S. 59.

Besides process servers, other county officials have been to the U.S. 59 property. Sharon Schrage claimed that during the time she owned the property at U.S. 59, the county attorney, representatives from the sheriff's department, representatives from the appraiser's office, a representative from the health department, and other county officials had been on the property.

### Matters Unique to the Hummers' Case

Terry Hummer was the president, sole stockholder, and resident agent of RVH, Inc. Count 257 in the tax foreclosure petition concerns a mobile home park owned by RVH, Inc. Neither Terry nor Yvonne Hummer had a personal ownership interest in Count 257. Sole ownership of the parcel in Count 257 was in RVH, Inc.

On March 30, 2004, a summons was issued for RVH, Inc. On August 12, 2004, separate summons were issued for Terry and

Yvonne Hummer. The address listed on the summons for all three parties was 4431 N.W. Greenhills Road, Topeka, Kansas, 66618. The return portion of the summons relating to Terry and Yvonne indicated that service was attempted but not obtained and that Terry and Yvonne were avoiding service. The return portion of the summons relating to RVH, Inc. indicated that agent service was obtained on "Sean Sweeney at SNSO."

The County obtained publication service on the Hummers through the same manner used to obtain publication service on the Schrages. The County also obtained a default judgment on Count 257 under the same motion used to obtain default judgment against Count 286 (the Schrages' tract). The notice of sheriff's sale on Count 257 was also published in The Oskaloosa Independent on the same dates as the notice provided in Count 286, and the property was sold at the same sheriff's sale.

On January 28, 2005, RVH, Inc. and the Hummers filed a motion to set aside the sale of Count 257 and the other counts in which they had an interest, claiming a lack of notice of the judgment or the sale.

At the hearing on his motion, Terry Hummer testified that he did not receive a summons with respect to this matter or any notice concerning the tax foreclosure sale; he did not recall any telephone calls from the Shawnee County Sheriff's office indicating that papers were available to be picked up at its office. Furthermore, Hummer testified that he never had an intent to avoid service of process on any court matter and that he did not attempt to conceal himself or avoid public places during the period in which service was attempted. He stated that Sean Sweeney was an employee of RVH, Inc. who performed general maintenance, and Hummer went on to say that he never authorized Sweeney to pick up a summons on any matter.

Rosemary Hanna, a process server with the Shawnee County Sheriff's office, testified at the hearing on the Hummers' motion. Hanna testified that she previously worked as a clerk with the sheriff's office, and during this time, she received a call from a person who identified himself as Terry Hummer. Hanna testified that process servers had previously gone to the Hummers' home at 4431

N.W. Greenhills Road in Topeka and had left notes on the door on two different occasions. Hanna claimed that when she received the call from Terry, she checked the computer system to determine if they had any outstanding papers for Terry Hummer but did not find any matches. When Hanna told Terry that they did not have any papers in his name, Hanna claimed he told her that it would probably be under the name of his company, RVH, Inc. Hanna then found two summons for RVH, Inc. and asked if Terry was going to pick them up. Hanna claimed Terry stated that either he or someone from his company would retrieve them.

Eventually, Sweeney came to the Shawnee County Sheriff's office and picked up the papers on April 15, 2004. Hanna claimed that she asked Sweeney whether he was a representative of RVH, Inc. and Sweeney answered affirmatively and claimed that Terry had sent him to pick up the papers. Hanna did not request any identification from Sweeney before serving him with the papers. Hanna claimed that Sweeney did not know what type of papers he was receiving.

At the hearing, Carrie Chambers, the city clerk and court clerk for the City of Meriden, testified that Sweeney had delivered sewer payments for RVH, Inc. into her office on different occasions. She also testified that Sweeney had accepted official documents from the City of Meriden on RVH, Inc.'s behalf.

Ultimately, the district court denied RVH, Inc. and the Hummers' motion to set aside the sale of Count 257.

## Standard of Review and Legal Principles

The Schrages' motion to set aside the sheriff's sale indicated that it was made according to K.S.A. 79-2804b. No Kansas case has defined the standard of review from a denial of a motion to set aside a sale under K.S.A. 79-2804b. But, we believe that an examination of K.S.A. 79-2804b persuades us that this action should be treated as we would treat a denial of a motion filed according to K.S.A. 60-260(b)(4) dealing with void judgments.

K.S.A. 79-2804b permits the filing of various motions to examine and modify tax judgments:

"Legal or equitable actions or proceedings may be brought to open, vacate, modify or set aside any judgment rendered for taxes, interest and costs or any order of sale made under the provisions of K.S.A. 79-2803, or amendments thereto, or any sale made under the provisions of K.S.A. 79-2804, or any amendments thereof, but every such action or proceeding, including those brought to set aside judgments on the grounds and in the manner prescribed by the code of civil procedure, must be commenced within twelve months after the date the sale of the real estate, which was affected by such judgment, order of sale or sale, was confirmed by the court."

We note that K.S.A. 79-2804b does not provide any standards by which a district court should grant a motion to set aside a sale. Simply put, under K.S.A. 79-2804b a party may seek to "open, vacate, modify or set aside" a judgment or a sale. Thus, determining a standard of review based solely on K.S.A. 79-2804b is not possible. We therefore examine the nature of the action.

In this case, the Schrages are essentially seeking to set aside the sale due to a lack of personal jurisdiction. See *In re Marriage of Brotherton*, 30 Kan. App. 2d 1298, 1301, 59 P.3d 1025 (2002) ("Jurisdiction over a party can be acquired only by issuance and service of process in the method prescribed by statute or by voluntary appearance."). If the district court lacked jurisdiction over the Schrages, then the district court's orders relating to them would be void. See *Abbey v. Cleveland Inspection Services, Inc.*, 30 Kan. App. 2d 114, 119, 41 P.3d 297 (2002). Accordingly, the Schrages' motion to set aside the sale is similar to a motion for relief from a judgment or order filed under K.S.A. 60-260(b)(4), which applies to void judgments.

Review of a K.S.A. 60-260(b)(4) order is de novo. See *State ex rel. Secretary of SRS v. Clubb*, 30 Kan. App. 2d 1, 3, 39 P.3d 80 (2001), where the court specifically ruled a de novo standard is to be employed:

"The standard of review on appeal from a ruling for relief from judgment under K.S.A. 60-260(b) is generally abuse of discretion. The movant must prove sufficient grounds for relief by clear and convincing evidence. [Citation omitted.] However, when a judgment is attacked under K.S.A. 60-260(b)(4) as being void, there is no question of discretion on the part of the trial court. 'Either a judgment is valid or it is void, and the court must act accordingly once the issue is resolved.' [Citation omitted.] 'A judgment is void if the court acted in a manner inconsistent

with due process. A void judgment is a nullity and may be vacated at any time.' [Citation omitted.]"

A de novo standard of review should be employed when reviewing motions to set aside tax judgments and orders of sales on the grounds of insufficient service filed according to K.S.A. 79-2804b.

In denying the Schrages' motion, the district court found that a presumption of validity existed concerning service of process and that the burden was on the Schrages to overcome the presumption. The district court found that the Schrages failed to sustain their burden. Finding a party did not meet its burden of proof is a negative factual finding. Such a finding will not be disturbed by an appellate court in the absence of proof of an arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice. See *General Building Contr., LLC v. Board of Shawnee County Comm'rs*, 275 Kan. 525, 541, 66 P.3d 873 (2003).

Our Supreme Court in deciding whether the district court erred in refusing to confirm a tax foreclosure sale due to a county's failure to perform a reasonable search prior to resorting to service by publication stated: "The initial burden was on the [party attacking service] to show that the County did not make a reasonable effort to determine a correct address." *Board of Reno County Comm'rs v. Akins*, 271 Kan. 192, 198-99, 21 P.3d 535 (2001). The statement on the burden of proof in *Akins* was previously stated in *Board of County Commissioners v. Knight*, 2 Kan. App. 2d 74, 78-79, 574 P.2d 575 (1978), in which this court found that a party attacking service by publication had the burden of proof to present a prima facie case. If such a showing was made, then the burden shifted back to the county to show that the party's due process rights were not violated. Accordingly, the district court's finding that the Schrages initially had the burden of proof was not erroneous. Thus, we conclude the use of the standard of review that applies to negative findings is proper.

### Analysis of the Schrages' Case

The Schrages argue that the district court erred in finding that they did not meet their burden of showing that they were not

properly served. It is undisputed that K.S.A. 60-307 allows for service by publication in tax foreclosure actions. However, the Schrages claim that the County failed to take appropriate actions prior to resorting to service by publication in an effort to ensure that their due process rights were protected.

For support, the Schrages rely on the decision in *Akins*. In discussing the issue of publication service and foreclosure orders, the Kansas Supreme Court first analyzed *Mullane v. Central Hanover Bank Tr. Co.*, 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (1950), the fundamental case dealing with the subject. The court in *Akins* stated:

> "*Mullane* does not stand for the proposition that service by publication deprives a party of their due process rights. Service by publication, without more, however, is unconstitutionally invalid. The Court in *Mullane* admitted that service by publication is nothing more than an exercise in futility a majority of the time. Service by publication will, more often than not, fail to provide notice to affected parties. Failure to provide actual notice, however, will not prevent a judicial foreclosure sale of real estate. A party's due process rights are protected by what occurs *prior to and in addition to* the attempted publication service. . . . The Court in *Mullane* approved of service by publication where addresses were not known, but disapproved of service by publication where addresses of parties could be reasonably ascertained. [Citations omitted.]" 271 Kan. at 197.

Clearly, under *Akins*, resorting to service by publication prior to conducting a reasonable search for a party's correct address is improper and violates due process rights. 271 Kan. at 197. Additionally, while the real estate at issue in the present case is not as economically valuable as the property in *Akins*, the property was valuable to the Schrages since they lived on it. Accordingly, the standard of reasonableness is heightened in the present case. Thus, this court must decide whether Jefferson County conducted a reasonable search for the Schrages' correct address prior to resorting to service by publication.

Even though it is clear from the record that the County had reason to be confused regarding the Schrages' current address, we do not think the County conducted a proper search prior to resorting to service by publication. There is evidence indicating that the County could have discovered the correct address by performing a reasonable investigation. First and foremost was Officer Char-

tier's testimony that as an officer with the Jefferson County Sheriff's office, he had served Kenneth approximately seven times, including once or twice at the U.S. 59 address. Therefore, if the County had contacted the sheriff's office prior to mailing the summons, it could have discovered the Schrages' correct address. We do not think it too onerous to require the County to first attempt personal service in the county by an officer employed just for that purpose before resorting to publication notice. If it would have been to no avail, the failed effort provides evidence of a reasonable investigation as to the whereabouts of the parties.

Additionally, Sharon testified that various county officials had been at the U.S. 59 property. Other than Sharon's claim of a visit by an official with the county health department where the official inspected the septic tank on the property and when county appraisers came to the property and saw furniture in the barn, it is unclear whether the remaining visits by county officials put the County on notice that the Schrages were living on the property.

While *Akins* does not require the County to exhaust every possible resource in attempting to determine a person's address or whereabouts prior to resorting to service by publication, it does require a reasonable search. The County's failure to attempt service at any address other than the Lawrence address goes against a finding of reasonableness, especially given the fact that personal service was never attempted at the property at issue. It is clear that the County had access to the U.S. 59 address but simply decided to only attempt service at the address which the treasurer's office had connected to the Schrages most often. We cannot find this to be reasonable.

Furthermore, we recognize that the behavior of the Schrages was suspect. This point is mentioned in *Akins*:

"We readily agree that a taxpayer has some duty to keep a county informed of the taxpayer's address and to pay property taxes. However, when we are dealing with substantial and/or valuable parcels of real estate (here it appears the land was worth in excess of $150,000), the efforts taken by the County to locate the landowner should be proportional to the use and value of the property." 271 Kan. at 200.

It appears the district court arbitrarily disregarded undisputed evidence. The court did not refer to the evidence supporting the

Schrages' claim, such as Chartier's testimony or even the fact that the County was aware of other addresses for the Schrages, in making its decision. Additionally, the only evidence the court referred to regarding the reasonableness of the County's search was the fact that the County attempted service at the Lawrence address. The court cited plenty of evidence showing why the County was confused as to the Schrages' correct address but did not indicate that it even considered the reasonableness of the search.

If the evidence disregarded by the district court is taken into account, it is reasonable to conclude that the County did not perform a reasonable search. The County admits to having multiple addresses for the Schrages but did not take any action other than searching motor vehicle records and attempting service at the Lawrence address to find the correct address. Unquestionably, other methods were available. The County's failure to use these methods resulted in a denial of the Schrages' due process rights. Accordingly, the district court's decision is reversed.

Since we are reversing this count, we need not examine the Schrages' claim that the County never actually attained service on them due to the County's failure to comply with K.S.A. 60-307(e).

### Analysis of the Hummers and RVH, Inc.'s Case

RVH, Inc. claims the district court erred by finding that it did not meet its burden of showing improper service. While publication notice was served on the corporation as well as the Hummers, publication notice is not the primary issue here. The County claims it obtained agent service on RVH, Inc. when it served Sean Sweeney. Since the corporation had sole ownership of the tract in Count 257, the service by publication as it relates to the Hummers individually is irrelevant.

The primary issue on appeal is whether Sweeney was an agent of RVH, Inc. at the time service was obtained on him. Resolution of this issue involves a review of factual findings made by the district court. We review these findings by determining whether substantial competent evidence exists to support them. See *U.S.D. No. 233 v. Kansas Ass'n of American Educators*, 275 Kan. 313, 318, 64 P.3d 372 (2003). " 'The court does not weigh conflicting evidence,

pass on credibility of witnesses, or redetermine questions of fact.' [Citation omitted.]" *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas,* 275 Kan. 763, 775, 69 P.3d 1087 (2003).

In this case, substantial competent evidence exists to support the district court's factual finding that Sweeney was a general agent of RVH, Inc. First, it was uncontested that Sweeney worked for RVH. Additionally, Rosemary Hanna, a process server with the Shawnee County Sheriff's office who was working as a clerk at the relevant time herein, testified that a person identifying himself as Terry Hummer called her after notes had been left at the Hummers' residence by process servers indicating that he needed to pick up papers. Hanna testified that Terry told her during the conversation that the papers would likely be under RVH, Inc. Hanna further testified that Terry told her that either he or someone from his company would get the papers. Hanna also claimed that a person identifying himself as Sweeney arrived on April 15, 2004, to pick up the papers. Hanna also testified that Sweeney stated that he was a representative of RVH, Inc. Additionally, Carrie Chambers, the city clerk and court clerk for the City of Meriden, testified that Sweeney had accepted official documents on RVH, Inc.'s behalf on prior occasions.

Terry Hummer disputed Hanna's account of their conversations and the claim that he authorized Sweeney to pick up papers on his behalf. However, as stated earlier, this court does not pass on the credibility of witnesses or reweigh conflicting evidence. The only question is whether the evidence presented by the County was sufficient to support the factual findings by the district court. Accordingly, after analyzing the evidence set forth above, substantial competent evidence exists to support the district court's findings of fact.

This evidence discussed above is sufficient to prove that Sweeney was not only directed to pick up the papers at Shawnee County but had also performed similar duties on other occasions. This is sufficient to show that Sweeney was a general agent of RVH, Inc. and, therefore, service was proper.

It is important to review the service statute. K.S.A. 60-304(e) allows service on corporations and other associations and states that

service can be obtained "by serving an officer, manager, partner or a resident, managing or general agent . . . ." The County claims that Sweeney was a general agent of RVH, Inc. Kansas courts have not set forth a precise definition of a general agent. However, in *Masek Distributing, Inc. v. First State Bank & Trust Co.*, 908 F. Supp. 856, 862 (D. Kan. 1995), the federal court enunciated principles it believed the Kansas Supreme Court would use when determining whether a person is general or special agent. Specifically, the court stated:

" 'One who is an integral part of a business organization and does not require fresh authorization for each transaction is a general agent.' [Citation omitted.] The extent of discretion an agent has regarding the transactions he or she is employed to perform does not bear on whether the agent is special or general. [Citation omitted.] 'Thus, one is a general agent if he is in continuous employment, although the employment consists of purchasing articles as the employer directs with no discretion as to the kinds, amounts, or prices to be paid.' [Citation omitted.]" 908 F. Supp. at 862.

We believe the definition of a general agent set out above is reasonable and find it persuasive.

Going further, we note that no Kansas case has addressed apparent authority in regards to service. However, other jurisdictions have found that the apparent authority principle is applicable to issues regarding service. See *Tullis v. Federated Mut. Ins. Co.*, 570 N.W.2d 309 (Minn. 1997); *Reisenger v. Reisenger*, 39 S.W.3d 80 (Mo. App. 2001); *Eastman Kodak Co. v. Miller & Miller Consulting Actuaries, Inc.*, 195 App. Div. 2d 591, 601 N.Y.S.2d 10 (1993); *Commonwealth v. One 1991 Cadillac Seville*, 853 A.2d 1093 (Pa. Commw. 2004).

If the apparent authority doctrine is applied to the present case, then Sweeney had apparent authority to accept service. The facts indicated that Terry contacted Hanna and told her that either him or one of his representatives would be by to pick up the papers. Sweeney later arrived and identified himself as a representative of RVH, Inc. No facts exist which indicate that Hanna had any reason to doubt Sweeney's capacity to accept the papers. Accordingly, service was proper.

We reverse the Schrages' judgment and remand. We affirm the RVH, Inc. judgment.

Affirmed in part, reversed in part, and remanded.