NOT DESIGNATED FOR PUBLICATION

No. 123,999

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

UNIFIED GOVERNMENT OF WYANDOTTE COUNTY/KANSAS CITY, KANSAS,
*Appellee*,

v.

JESUS ESTRELLA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; ROBERT P. BURNS, judge. Opinion filed October 21, 2022. Reversed and remanded.

*Conrad Miller Jr.*, of Miller Law Firm of Kansas, P.A., of Overland Park, for appellant Jesus Estrella.

*Wendy M. Green*, senior counsel, of Legal Department, Unified Government of Wyandotte County/Kansas City, Kansas, for appellee.

Before ISHERWOOD, P.J., GREEN and BRUNS, JJ.

PER CURIAM: After attempting place of business and publication service, the Unified Government of Wyandotte County/Kansas City, Kansas (County) sold Jesus Estrella's properties at a tax delinquency sale. About a month later, Estrella moved to set aside the sale due to insufficient service, but the district court denied the motion. Estrella now appeals to our court. He contends the district court erroneously denied his motion to set aside the sale because the County's methods of service fell short of the notice required to satisfy the Due Process Clause of the Fourteenth Amendment to the United States

1

Constitution. Following a thorough review of the record and analysis of the parties' arguments, we find the County's actions were deficient. Specifically, it had documentation readily available that offered a pathway to acquisition of Estrella's home address so it could attempt personal service, but it never made effective use of that resource. Given this deficiency the decision of the district court refusing to set aside the sale of Estrella's property cannot be permitted to stand and is hereby reversed.

FACTUAL AND PROCEDURAL BACKGROUND

Until their sale in December 2020, Jesus Estrella owned three commercial properties in Kansas City, Kansas (the properties). In April 2019, Estrella agreed to pay $250 per month to Wyandotte County to whittle down three years' worth of back taxes on those properties. Edgar Escalante, Estrella's attorney, executed that agreement on Estrella's behalf and attached a specific power of attorney in which Estrella appointed Escalante as his attorney to "do and perform all and every act necessary to manage the properties including payment of real estate taxes for [the properties]." Escalante's phone number was also listed after his signature on the tax repayment agreement. Estrella signed the power of attorney document, had it notarized by a public notary, and filed it with Wyandotte County. One of the properties covered by the agreement was listed as Estrella's mailing address.

Estrella failed to make any of the agreed-upon payments. So in January 2020 the County initiated proceedings for a tax sale on the properties and a process server delivered a summons to the property unit that Estrella listed as his mailing address on the documents he filed in the County's Treasurer's Office. An individual named Nancy Luma accepted service at that address. Roughly six weeks later, the County published a notice of sale in The Wyandotte Echo newspaper. In December 2020, after Estrella failed to contest the action as a result of either of those methods of service, the County sold the properties.

2

About a month after the sale, Estrella moved to set it aside. He argued the County failed to give him adequate notice of the sale because it served him at his commercial rental property but never sought to serve him at his home address in California. The County argued that service at Estrella's business was proper because that was the mailing address he provided and he never notified the County that he lived in California.

The district court held a hearing on Estrella's motion. The County remained firm in its position that Estrella was properly served at the business property, while Estrella's counsel was just as rooted in his stance that service was improperly made at a commercial building rather than Estrella's personal residence. The district court noted that publication service also occurred, which prompted a response from Estrella's counsel that no reasonable efforts were made to locate Estrella before resorting to publication. According to counsel, the information necessary to obtain Estrella's home address and thus achieve personal service was available through the power of attorney document on file. Interestingly, the County responded with the claim that the document was "not on record anywhere," but Estrella's counsel quickly pointed out that it was among the County's own exhibits. That revelation forced the County to concede to its possession of the document and then offer an alternative argument that the document had no significant use beyond controlling the repayment agreement. Estrella's counsel stood firm and simply reiterated that the County could and should have simply contacted Escalante to obtain the address for Estrella's personal residence.

The district court ultimately did not find the arguments advanced by Estrella's counsel persuasive. Rather, it concluded that the County rightly relied on the mailing address Estrella provided as the proper location to achieve personal service and that if Estrella desired a different outcome the burden was on him to provide a different mailing address. The burden was not on the government to determine the accuracy of the mailing address he provided and sleuth out the existence of any other possible and more

3

appropriate addresses at which personal service could be attained. Estrella's motion to set aside the sale was denied.

Estrella timely appeals and requests that we analyze and determine whether the district court erred when it denied his motion.

ANALYSIS

*The County's methods of service were not sufficient to honor Estrella's right to due process.*

Estrella appeals from the district court's denial of his motion to set aside the tax sale of his properties. While motions for relief from judgment are generally reviewed for abuse of discretion, a de novo review is more appropriate in appeals from motions to set aside tax judgments and orders of sale when insufficient service is at issue. See *Board of Jefferson County Comm'rs v. Adcox*, 35 Kan. App. 2d 628, 636, 132 P.3d 1004 (2006). Estrella moved to set aside the judgment based on insufficient service that violated his right to due process. When a court acts in a manner inconsistent with due process, the corresponding judgment is void. Void judgments are considered nullities that may be vacated at any time. 35 Kan. App. 2d at 635-36.

When a real estate owner fails to pay property taxes for a long time, the government may sell the property to collect those assessments. But before it may do so, it has the obligation to make reasonable efforts to notify the owner of the pending sale. The United States Constitution guarantees that property may not be taken by the government without due process. *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 795-98, 103 S. Ct. 2706, 77 L. Ed. 2d 180 (1983); *Board of Reno County Comm'rs v. Akins*, 271 Kan. 192, 196-97, 21 P.3d 535 (2001). When a property owner does not receive adequate notice that their property will be sold at a tax sale it can result in a violation of that

4

individual's due process rights. *Alliance Mortgage Co. v. Pastine*, 281 Kan. 1266, Syl. ¶ 6, 136 P.3d 457 (2006).

On appeal, Estrella maintains his argument that when the County failed to notify him of the impending sale of his properties, he was denied due process of law before that sale occurred. He asserts the County could have easily contacted Escalante, his attorney, who would have readily provided Estrella's personal home address. The County offers three arguments to explain why it did not have the burden to contact Escalante: (1) The power of attorney document only authorized Escalante to act on Estrella's behalf during the 2019 repayment negotiations; (2) since the power of attorney document was filed with the Treasurer's Office and not with the delinquent real estate office, the County was unaware of Escalante's authority and had no obligation uncover the existence of the document; and (3) since K.S.A. 60-304(a) permits service at an individual's place of business, leaving the summons with Estrella's business tenant constituted proper notice.

The method by which plaintiffs choose to serve defendants should be reasonably certain to inform them of the action. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315, 70 S. Ct. 652, 94 L. Ed. 865 (1950). In *Jones v. Flowers*, 547 U.S. 220, 225, 126 S. Ct. 1708, 164 L. Ed. 2d 415 (2006), the United States Supreme Court held that for times when the government fails to serve an individual at his or her home, it must take "additional reasonable steps to attempt to provide notice to the property owner before selling his property." When assessing the reasonableness of the government's chosen form of notice under those circumstances, the court must balance the government's interest against the individual interest sought to be protected. 547 U.S. at 229.

In determining whether the County's efforts were reasonable, Estrella bears the initial burden of establishing that his home address was readily accessible to the County for purposes of personal service. See *J.A. Tobin Construction Co. v. Williams*, 46 Kan.

App. 2d 593, 597, 263 P.3d 835 (2011). If he successfully makes such prima facie showing, the burden then shifts to the County to establish that its selected method of service did not violate Estrella's due process rights. See *Adcox*, 35 Kan. App. 2d at 636.

We find that Estella successfully fulfilled his obligation. That is, less than one year before the County sought to sell the properties, Estella took the affirmative step to vest Escalante with power of attorney, memorialize that designation in writing, and properly file that document with the Wyandotte County Treasurer's Office. Moreover, that filing made it undeniably known that Escalante was to "do and perform all and every act necessary to manage [Estrella's] properties including payment of real estate taxes for [the properties]." This power extended to "all intents and purposes as [Estrella] might or could do if personally present and personally acting." Kansas courts have held that a power of attorney must not be construed in a way that defeats the intention of the grantor. *Muller v. Bank of America*, 28 Kan. App. 2d 136, 139, 12 P.3d 899 (2000). Rather, the interpretation must give effect to the purpose of the principle. 28 Kan. App. 2d at 139. The proper scope of the document filed by Estrella was to transfer power over *all* tax related issues to Escalante. We have no problem concluding that under the text of the document, it was reasonable to expect the County to contact Escalante before it executed a tax foreclosure sale on the properties.

The County further contends it could not have been expected to contact Escalante because the power of attorney document was filed with the Wyandotte County Treasurer's Office rather than the delinquent real estate office, which is "responsible for assisting the county attorney with processing tax sales."

*Akins* is instructive in the analysis of this argument. In that case, Reno County failed to contact the county office of the United States Department of Agriculture—which had the landowners' address—before it resorted to notice by publication. On review, the

Kansas Supreme Court found that Reno County should have contacted the local branch of that federal agency:

> "Although there might be some question about confidentiality, the Reno County office of the United States Department of Agriculture had the correct names and addresses of the landowners, as well as the tenant, and at a bare minimum could have forwarded letters containing a notice of them if requested to do so." 271 Kan. at 200.

In other words, the court believed it was reasonable to expect a county to contact a fellow government office as part of its quest to find a landowner's address before it published the notice of sale. The court affirmed the district court's judgment that Reno County failed to give proper notice. *Akins*, 271 Kan. at 200.

Estrella's case is even more compelling in that it presents a situation where the County's own offices contained the necessary information. In *Akins*, the landowner had not given the Department of Agriculture the authority to manage his property's tax issues. But Escalante had the explicit authority to manage the properties' tax liabilities. Notably, at the hearing on Estrella's motion to set aside the tax sale, the County acknowledged it was in possession of the document reflecting Escalante's relationship with Estrella and his authority over the property at issue. And in *Akins*, there was no guarantee that the Department of Agriculture had the landowner's address; here, Estrella conveyed power of attorney over his properties to Escalante—a broad grant of authority that implies an ongoing relationship. The reasonability of contacting Escalante was more practical than the investigation the Supreme Court considered sound in *Akins*.

A panel of this court recommended Jefferson County take a similar approach in *Adcox*. There, the property owners moved several times but failed to notify the county of their latest address. But a deputy at the sheriff's office had served the property owners about seven times at their correct address, so the panel noted, "if the County had contacted the sheriff's office prior to mailing the summons, it could have discovered the

[property owners'] correct address." 35 Kan. App. 2d at 638. "We do not think it too onerous," the panel wrote, "to require the County to first attempt personal service in the county by an officer employed just for that purpose before resorting to publication notice." 35 Kan. App. 2d at 638. So too here, it is not too onerous for the government to review its own files on the properties to obtain information that might enable it to obtain Estrella's personal address.

Additionally, a panel of this court recommended Wyandotte County act similarly in *J.A. Tobin Construction Co.*, 46 Kan. App. 2d 593. There, the owner of the tax-delinquent property was a corporation that forfeited its corporate status in Kansas, so the Kansas Secretary of State did not have the corporation's address on file. But the corporation's status and address were current in Missouri, and Wyandotte County had access to Missouri's online records. After the County failed to check Missouri's records to learn the corporation's true address, it served the corporation by publication and then ultimately sold the property. The panel held that although the corporation had not kept its records current in Kansas, the County "didn't make the reasonable follow-up step of checking this Missouri corporation's status in Missouri." 46 Kan. App. 2d at 599. And since this simple step would have revealed the corporation's address, the County's failure to take it meant that it did not afford the corporation due process. In sum, the County cannot evade its burden to use reasonable methods to find Escalante's address simply because the power of attorney document was filed in a different government office.

There is a distinct possibility that had the County tried to contact Escalante it could have acquired the specific information necessary to achieve personal service for Estrella. It being our conclusion that Estrella made the necessary prima facie showing we turn to whether it was still reasonable for the County to notify Estrella through service on his business tenant and by publication rather than attempt to obtain his contact information from Escalante.

8

The County highlights K.S.A. 60-304(a) as support for its conclusion that service on Estrella's tenant at Estrella's business was proper. But this provision is qualified:

"If the [server] files a return of service stating that the return receipt delivery to the individual at the individual's dwelling or usual place of abode was refused or unclaimed and that business address is known for the individual, the sheriff, party, or party's attorney may complete service by return receipt delivery, addressed to the individual at the individual's business address." K.S.A. 2019 Supp. 60-304(a).

Thus, the plain language of the statute requires the County to first show that it tried to serve Estrella at his home *before* it may serve him at his business address. See *Fisher v. DeCarvalho*, 298 Kan. 482, 489-92, 314 P.3d 214 (2013) (stating an attempt to serve an individual at their home is a statutory prerequisite for service at the individual's business address). It is without question that step was not satisfied here.

Moreover, even if the County did attempt to first serve Estrella at his home address, it is doubtful that the commercial property—which houses Estrella's business tenant—truly qualifies as Estrella's "business address." Estrella did not work at the address, nor did he own the business that occupied the address. Rather, he simply owned the building where the business of another was located. According to Estrella, he did not even know the person who accepted service. This method of service falls short of the notice Estrella is entitled to.

The district court's decision to deny Estrella's motion to set aside the sale rested largely on Estrella's decision to list the address of one of the properties as his mailing address on the properties' records. One might argue that this decision and Estrella's failure to update the file meant Estrella forfeited any claim that the County did not make a reasonable effort to find his address. This again resembles *Adcox*, where the landowners had moved many times and failed to update their address with the county. But even though the landowners' own conduct "contributed to the confusion about their correct

9

address," the panel noted that a county sheriff's deputy knew the landowners' actual address, so the county should have known to serve them there. 35 Kan. App. 2d at 631-32; see also *Board of Commissioners v. Knight*, 2 Kan. App. 2d 74, 78, 574 P.2d 575 (1978) (finding that the landowner did not notify the county of her correct mailing address, but *Mullane* requires counties to "make a reasonable effort to find a correct address to which notice can be mailed"). So too here, although Estrella listed his commercial property's address as his home address, once the County noticed that the listed address was a commercial property, it should have undertaken reasonable efforts to obtain Estrella's home address.

Finally, although K.S.A. 2019 Supp. 60-307 authorizes service by publication, it is often an exercise in futility. See *Akins*, 271 Kan. at 197. For that reason, the Due Process Clause requires the government to undertake reasonable efforts to learn an individual's address before it resorts to service by publication. See generally *Mullane*, 339 U.S. 306. As our discussion to this point reflects, such reasonable efforts were not exercised here, and as such, we cannot conclude that service by publication constituted effective service.

In sum, Estrella presented a prima facie case that the County could have found his home address when he established that the County was in possession of information that could have enabled it to potentially acquire Estrella's home address, but it failed to pursue that avenue before resorting to lesser methods of service. The County's arguments for why it should not be expected to use that information are unpersuasive. The decision of the district court denying Estrella's motion to set aside the sale of his property is reversed.

Reversed and remanded.